ORR et al. v. DOUBLEDAY, PAGE & CO.

(Supreme Court, Appellate Division, Second Department.   March 24, 1916.)

1. LANDLORD AND TENANT ☞86(1)—RENEWAL OF LEASE—EXERCISE OF OPTION.

Where a tenant, under a term giving it the option to renew for similar term, who had sublet the premises to another for the balance of the term, gave notice to the landlord, an executor, of intention to renew, provided the sublessee was not substituted as tenant with the consent of the court, in which case the notice of renewal was to be withdrawn, and, notwithstanding the failure of the landlord to take any steps to procure an approval of the court, gave later notice of its intention to renew, and asked for an acknowledgment thereof, and then, upon the failure of the sublessees, sublet portions of the premises for terms extending beyond the original lease, the option to renew was exercised, and the tenant was liable for the rent for the renewed term, though before the expiration of the original term it withdrew its notice and vacated the premises.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270, 271, 275; Dec. Dig. ☞86(1).]

2. LANDLORD AND TENANT ☞86(2)—RENEWAL OF LEASE—EXERCISE OF OPTION—ACCEPTANCE BY LANDLORD.

The failure of a landlord to acknowledge receipt of any of the notices of renewal did not prevent them from becoming binding, since no acceptance was necessary to complete the exercise of the option for renewal.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 272, 274; Dec. Dig. ☞86(2).]

3. LANDLORD AND TENANT ☞88(1)—LEASE—"RENEWAL."

A provision in a lease for its "renewal" at the expiration of the term is not distinguished from a provision for its extension, so as to require the execution of a new lease before the tenant becomes bound, especially where the tenant, in one of its notices, spoke of its right as an option of extension.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 279, 280; Dec. Dig. ☞88(1).

For other definitions, see Words and Phrases, First and Second Series, Renewal.]

4. CONVERSION ☞21(2)—GIFT IN TRUST TO SELL—SUIT BY TRUSTEE.

Where a will gave property to the executors in trust, to be collected and converted into cash, all property to be sold and proceeds to be divided into six shares, a portion of the income from each of which was to be paid to testator's wife for life, and after her death the shares of the executors were to be paid to them immediately, and the other shares to testator's children when they attained specified ages, there was an equitable conversion of the property, and the executors, as trustees, could maintain an action to recover the rent under a lease of real property without joining the other beneficiaries as plaintiffs.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 56-65; Dec. Dig. ☞21(2).]

Appeal from Nassau County Court.

Action by Henry S. Orr and another, as executors, against Doubleday, Page & Co.   Judgment for the plaintiff on directed verdict, and defendant appeals.   Affirmed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and PUTNAM, JJ.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Dean Emery, of New York City (Frederic R. Kellogg and Earle L. Beatty, both of New York City, on the brief), for appellant.

Alfred B. Cruikshank, of New York City, for respondents.

PER CURIAM. [1] The chief issue here is whether defendant, which had leased from John C. Orr a building on East Sixteenth street, Manhattan, for 10 years ending November 1, 1914, with an option of renewal, gave notice of intention to renew, by which defendant became liable for rent during the renewal term. Besides denying the averments as to such renewal, the amended answer asserts a defect of parties plaintiff. It alleges that three surviving Orr children, individually, had title on November 1, 1914, and therefore should be plaintiffs. Upon defendant's removal, in October, 1910, from the borough of Manhattan to Garden City, it no longer required this building; but the lease with this privilege of renewal was considered advantageous and profitable. As early as September, 1910, defendant suggested a prospective successor in its leasehold interest, but these suggestions were not consummated. Early in 1911 negotiations were had with a view to assigning to a Mr. Samuel Greenberg the remaining 3½ years of the original term, which would carry over to him this renewal option. It was proposed that he should pay $11,000 yearly rent, instead of $10,000 reserved under the lease. If this substitution should receive the court's sanction, and defendant's liability be canceled, the executors were to be paid $1,000 cash, and the legal expenses, not exceeding $500, to procure such authority from the court, and further defendant was to guarantee Mr. Greenberg's rent for the remaining 3½ years. While this proposal remained unaccepted, and on March 24, 1911, Mr. Greenberg, in the name of the Irving Place Leasing Company, of which he was president, took from defendant a sublease of the entire premises from May 1, 1911, to November 1, 1914. Should the court authorize the trustees to substitute this subtenant as lessee, then there were further agreements between the subtenant and defendant. With such expectations, defendant, on March 29, 1911, sent the first notice of renewal, of which the important parts are:

"We hereby notify you that it is our intention to take advantage of our rights and renew for a period of 10 years beginning November 1, 1914, terminating October 31, 1924, with the understanding that this notice is to be withdrawn, if the court consents to accept the transfer of the lease now in course of negotiation to the Irving Place Leasing Company, in which event the estate of John O. Orr is to consent to the assignment of our lease to the Irving Place Leasing Company as per agreements now pending."

Defendant then looked for a complete disposal of its interest in this lease, through this authorized substitution of the subtenant in defendant's place. Apparently weeks passed without the lessors taking any steps to obtain such authority. It never was obtained, and apparently not applied for; but it does not appear when this idea of a substitution was definitely given up.

In the meantime, the Irving Place Leasing Company was subletting, so that defendant was being asked for authority to make longer terms to subtenants of the Irving Place Company, which, in 1912, appeared

to be solvent and prosperous. Defendant accordingly, on October 28, 1912, wrote to the Orr estate:

"On or about June 1, 1911 (a clerical error for March), we notified you of our intention to renew the lease for the property at 133 East Sixteenth street for a period of 10 years, taking advantage of the option given us in our lease. The second term begins November 1, 1914. The present tenant of the building, the Irving Place Leasing Company, desire to give to a respective (sic) tenant a five-year lease for the fifth floor of the building, and have requested us to give them the lease for the second term, namely, from November 1, 1914, to November 1, 1924. Won't you please send us communication acknowledging receipt of our notice to you of our intent to take advantage of this option?"

The writer alluded to defendant's yearly profit of $750 by its sublease, and the satisfactory manner the Irving Place Leasing Company was meeting its obligations, but asked the Orr estate to make defendant a proposition to take over the lease. It concluded:

"Please send at once the acknowledgment of our notice, and let us hear from you in reference to the lease after you have had time to give it careful consideration."

Neither this letter, nor the one of March, 1911, was ever acknowledged. The 5-year lease of the fifth floor was apparently made to the Phœnix Engraving Company by the Irving Place Leasing Company, which latter's affairs became so involved that, in the spring of 1913, it was dispossessed by defendant. This left the Phœnix Engraving Company in difficulties, as it had made expensive alterations upon the faith of its 5-year term. On April 1, 1913, defendant granted the Phœnix Engraving Company a new lease to cover the original 5-year term, which ran to December 31, 1917, thus overrunning defendant's original term. While defendant was thus protecting an innocent victim of another's default, still the granting of such a lease assumed the effect and efficacy of its prior notices of renewal. At this time defendant gave another lease to the American Letter Company, which ran two or three months beyond October 31, 1914. However, the situation appears to have changed quite abruptly, as on April 28, 1913, defendant wrote to the Orr estate:

"We wish to write and withdraw the tentative proposal for the continuation of our lease on your property at 133–137 East Sixteenth street. It is our understanding of the lease that we have up to within 90 days of its expiration as a period in which we can definitely take the option of extension which the lease secures to us."

This was unanswered. On November 1, 1914, defendant vacated the premises. This action for 3 months' rent was begun January 1, 1915. The letter of March 29, 1911, was a direct notice of intention to renew. If the trustees should be allowed to accept the Irving Place Leasing Company as a tenant, such a notice might stand in the way; hence the understanding stated that in such event the notice is to be withdrawn—a right thus made dependent upon this substitution. Though the representatives of the Orr estate never obtained such leave, defendant did not withdraw, and by not exercising this reserved right allowed it to lapse and the notice to become absolute. The October letter confirmed the defendant as a continuing tenant, then planning to grant 5-year terms to its subtenants.

[2] Defendant's counsel cites Poel v. Brunswick-Balke-Collender Co., 216 N. Y. 310, 110 N. E. 619, as to the effect of the lessors' disregard of defendant's request that its October letter be acknowledged. Defendant in that case embodied in an order for merchandise a condition, which it had a right to annex to its offer, that "in any event you must promptly acknowledge" the order. In such case a failure to reply was deemed no acceptance. Here an acknowledgment was simply requested, and not made an essential condition. Clearly, therefore, the notices through these successive letters, especially in view of defendant's two leases running into the renewal term, effected a definite renewal of the lease, which its letter of April 28, 1913, was ineffective to withdraw or cancel.

[3] The learned counsel, however, urges the verbal distinction between a "renewal" of a lease and its "extension"—in that an extension prolongs any existing lease without a new instrument, while "renewal" is strictly a new lease; hence that defendant should not be held liable under the old lease, but that, as a condition of its liability, the lessors should have tendered a new lease for 10 years from November 1, 1914. Such nicety in distinguishing legal terms, however, is not accepted in New York, where McAdam on Landlord and Tenant (section 152) has declared for a wider scope for the word "renewal." See Hausauer v. Dahlman, 72 Hun, 607, 25 N. Y. Supp. 277; Underhill, Landlord and Tenant, § 803. Indeed, defendant itself terms its right as an "option of extension" in its formal letter of April 28, 1913. Hence defendant's notices effectually bound it upon a renewal term without the formality of a further 10-year lease.

[4] But the defect of parties is insisted upon. The will of John C. Orr, who died December 15, 1906, was considered in Orr v. Orr, 147 App. Div. 753, 133 N. Y. Supp. 48, in extended opinions by Clarke, J., and Ingraham, P. J., dealing with the alleged suspension of the power of alienation. The statute was held not to be violated, because each interest will terminate upon the beneficiary reaching the age in the will. 147 App. Div. 757, 133 N. Y. Supp. 48.

All the testator's property was given to his executors in trust by the eighth paragraph of the will, "to collect and receive the same and convert the same into cash except as hereinafter stated." A trust to sell for the benefit of legatees is one of the allowable purposes for trusts in New York. Save as therein excepted, the property was to be sold and the trust estate divided into six shares, setting apart a portion to each beneficiary and "to place the same at interest for their benefit and for the benefit of my said wife," and "to pay over to my said wife, semiannually, two-fifths of the net income or interest of each of said portions for and during," her life and "during that time to pay the remaining three-fifths of said income" to or for the children in the manner stated. Upon the widow's death the share of Henry S. Orr and Mary Louise Orr thus set apart for him and her is to be paid over to them respectively. The shares of each of the other four children are to be retained by the trustees paying over the net income to such as are of age, with payment of the principal shares when two of the children respectively reach the age of 30 years, and

to the remaining two children when each is of the age of 35 years. As ancillary to these dispositions, the will in the thirteenth clause has this power of sale:

"I further authorize my executors and trustees and the survivors of them to sell, convey, mortgage, lease and release any property, real or personal, which I may own at the time of my decease, wherever situated."

From all of these provisions, it cannot be doubted that an equitable conversion was intended. The purpose of the trust is to sell, to invest, and to pay. Stagg v. Jackson, 1 N. Y. 206; Dodge v. Pond, 23 N. Y. 69; Finley v. Bent, 95 N. Y. 364. The direction to pay supports the construction that a conversion was intended. Chamberlain v. Taylor, 105 N. Y. 185, 11 N. E. 625. The scheme of separation of shares and delivery of shares to the different children call for conversion of the land into personalty, although the language of the power of sale, taken alone, is not a positive direction for such sale. The trustees here, as such, are therefore vested with full title to these rents, which remains after the children reach the ages provided for payment to them of their separate shares, and this judgment in favor of the plaintiffs is a full protection to defendant against the rights of any heirs of the lessor.

It follows that the verdict for plaintiffs was rightly directed. The judgment entered thereon by the County Court of Nassau County, with its order denying defendant's motion for a new trial, should be affirmed, with costs.