THURSTON v. F. W. WOOLWORTH COMPANY.

[No. 9,443. Filed November 21, 1917.]

1. LANDLORD AND TENANT.—*Leases.*—*Extension and Renewals.*—*Necessity of Election.*—Where a lease provides for an extension for a specific time after the expiration of the agreed term, the mere holding over will constitute an election to hold for the additional term, but where the lease gives a privilege for a renewal, the tenant, by some affirmative act, must indicate his election to avail himself thereof prior to the expiration of the current term. p. 31.

2. LANDLORD AND TENANT.—*Lease with Privilege of Renewal.*—*Election of Renewal.*—*How Indicated.*—*New Lease.*—Where a

tenant occupies premises under a lease giving the privilege of renewal, it is unnecessary that a new lease be executed in order that the tenant may exercise such privilege, unless the original lease so stipulates, and a letter from the tenant notifying the landlord of "our acceptance of the renewal" of the lease was sufficient. p. 32.

3. LANDLORD AND TENANT.—*Leases.—Renewal.*—Under a lease not containing a covenant of the landlord to renew, but stipulating that the lessee "shall have the privilege of renewing" the lease, an election by the tenant is the only thing required to give him the additional term, and no further agreement on the landlord's part is necessary. pp. 34, 35.

4. FRAUDS, STATUTE OF.—*Leases.—Renewals.*—A lease for five years, giving the privilege of a renewal for a like term at the lessee's election, is not unenforceable in the absence of a new lease for the renewal period as being in violation of the statute of frauds, since on the tenant's election to be bound for the additional term, the original lease fixed the rights of the parties and satisfied the requirements of such statute. p. 36.

From Shelby Circuit Court; *Alonzo Blair,* Judge.

Action by Arthur J. Thurston against the F. W. Woolworth Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*F. Neal Thurston* and *Hord & Adams,* for appellant.

*Smith, Remster, Hornbrook & Smith,* for appellee.

BATMAN, J.—Appellant commenced this action against appellee in the Shelby Circuit Court to recover the possession of certain real estate. The complaint alleges that appellee held possession of said premises under a five-year lease, which expired on April 30, 1915; that since said date appellee has wrongfully and unlawfully detained possession thereof from appellant to his damages in the sum of $200. Demand for immediate possession and damages. Appellee filed its answer in a single paragraph in which it alleged in substance, among other things: That on April 12, 1910, appellant leased the real estate described in the complaint to F. W. Woolworth and

Company for a period of five years, beginning on May 1, 1910, and ending on April 30, 1915, at an annual rental of $600, payable in equal monthly installments of $50 in advance, on the first day of each and every month during the term of such lease; that said lease described appellee as the party of the second part, and contained the following provision:

"It is further understood that the party of the second part shall have the privilege of renewing this lease for a further period of five years from April 30th, 1915, under the same terms and conditions as this lease herein contains."

That said F. W. Woolworth and Company, under and pursuant to the terms of said lease, entered into possession of said real estate and occupied the same until February 5, 1910, when it transferred the said lease to appellee by assignment, and that appellee thereupon, in pursuance of such assignment and transfer, entered into possession of said real estate and occupied the same continuously until the bringing of this action, and had fully kept, observed, and performed all the terms and conditions of said lease to be kept and performed by the lessee; that prior to the expiration of said lease, to wit, on October 21, 1914, appellee gave notice in writing of its election to continue such tenancy, according to the provisions of said original lease for the further term of five years from April 30, 1915, which notice was addressed to appellant and signed by appellee, and was in the words and figures following:

"Referring to the lease under which we are now occupying your premises in Shelbyville, Indiana, bearing date of April 12, 1910, beg to notify you that we are desirous of availing ourselves of the option contained therein regarding

the renewal of the lease for a period of five years from April 30, 1915. Kindly acknowledge receipt of this communication, and oblige.''

That in answer thereto, appellee received a letter from F. Neal Thurston, the attorney of appellant, dated November 9, 1914, as follows:

''As attorney for A. J. Thurston, Shelbyville, Ind., I have been handed your letters to him dated Oct. 21st and Nov. 5th last, relative to the renewal of the lease between you parties on the room or quarters occupied by your Shelbyville branch. This lease does not expire for several months and the delay in replying has been due to the abundance of time yet ahead before that expiration. My understanding is that you are entitled to a renewal of the present lease for another term of five years from April 30th, 1915. Provided this new term is based upon the terms of the present lease with respect to conditions as they existed at the time of the original letting. By this I mean that the lessor does not care to assume under a renewal lease any further burdens of upkeep than he is now liable for. I suggest that you prepare the renewal leases in triplicate and forward for our approval, mailing copy to me.''

That appellee, on November 11, 1914, made answer thereto by letter in the words and figures following:

''Replying to your favor of November 9th, referring to the letters which we wrote to Mr. A. J. Thurston, Shelbyville, Indiana, on October 21st, and November 5th in regard to the renewal of the lease which was made by this company with Mr. Thurston on April 12, 1910, for a period of five years, with a renewal clause for a further period of five years, at the same rental and other conditions, will say the terms of the lease are such that we do not consider it essential that new leases be drawn up. Mr. Thurston has our writ-

ten communications notifying him of our acceptance of the renewal for the further period of five years, and if Mr. Thurston will simply send us a written communication acknowledging receipt of our notices and accepting the renewal on the basis of the terms specified in the lease, which communication we can attach to and will form a part of the original lease, we believe it will be all that is necessary, and will fully cover and protect the interests of both parties.''

That thereafter, on November 13, 1914, appellant in his own proper person and under his hand made further answer to said letter of appellee, under date of October 21, 1914, as follows:

"I beg to advise you that I am in receipt of your letter of the 21st of October, 1914, in which you refer to the present lease you hold on my rooms here in my building and say 'we are desirous of availing ourselves of the option contained therein regarding the renewal of the lease for a period of five years from April 30, 1915.' I acknowledge your privilege to so act under the present lease for a rental for five years from April 30th, 1915, upon the original terms of the lease above referred to.''

That thereafter appellee continued in possession of said premises and paid the rent therefor, as stipulated in said lease, until April 30, 1915, on which date appellant notified appellee that thenceforward the rent for said real estate would be $90 per month instead of $50 as provided in said original lease. That appellee has at all times been, and still is, ready, willing, and able to pay appellant the prescribed rent of $50, and in all other ways to keep, observe, and perform all the obligations of said lease obligatory upon the lessee, and has offered so to do, but appellant has rejected said offers and demanded that

appellee shall pay $90 per month as rent for said real estate. To this paragraph of answer appellant filed a demurrer for want of facts, accompanied by a sufficient memorandum to require a consideration of the points urged against the same. This demurrer was overruled and the proper exception reserved. Appellant refused to plead further, and judgment was thereupon rendered in favor of appellee. From this judgment appellant prosecutes this appeal, and relies upon the alleged error of the court in overruling his demurrer to appellee's said paragraph of answer as cause for reversal.

The evident theory of the paragraph of answer in question is that an existing lease held by appellee for the premises in question gave it the privilege of renewing the same for a further period of five years after the expiration thereof; that in pursuance of the privileges so granted, it did renew such lease for such further period of five years, and was therefore entitled to retain possession of such premises during such period, by virtue of such renewal. The sole question for our determination is: Does the answer show that appellee exercised the privilege thereby granted so as to render it effective?

While the courts in some jurisdictions disregard any distinction between a privilege to extend a lease and a privilege to renew the same, the courts of this state, by implication at least, have recognized that such a distinction exists. *Thiebaud* v. *First Nat. Bank, etc.* (1873), 42 Ind. 212; *C. Callahan Co.* v. *Michael* (1909), 45 Ind. App. 215, 90 N. E. 642. As a result of such distinction, the decisions in these cases, in effect, sustain the general rule that where a lease provides for an extension for a specific time, after the expiration of the agreed term, the

mere holding over by the tenant will constitute an election to hold for the additional term, but where the lease gives a privilege for a renewal, the tenant, by some affirmative act, must indicate his election to avail himself of such privilege prior to the expiration of the current term.

It is clear that the privilege granted by the lease in the instant case is for a renewal and not for an extension. The sufficiency of the answer therefore 2. depends upon whether or not the facts alleged show that appellee exercised the privileges of renewal granted it by the lease in question in such a manner as to render it effective for the additional term of five years. Appellant contends that under the privilege to renew contained in the original lease, it was necessary that a new lease be made out and executed by the parties, or tendered to appellant for execution. We do not concur in this contention. An investigation of the authorities in other jurisdictions discloses a lack of harmony on this question. The courts in a number of jurisdictions have held that a new lease is wholly unnecessary in the exercise of a privilege of renewal. *Andrews* v. *Marshall Creamery Co.* (1902), 118 Ia. 595, 92 N. W. 706, 60 L. R. A. 399, 96 Am. St. 412; *Hausauer* v. *Dahlman* (1893), 72 Hun 607, 25 N. Y. Supp. 277; *Ranlet* v. *Cook* (1863), 44 N. H. 512, 84 Am. Dec. 92; *Willoughby* v. *Atkinson Furnishing Co.* (1899), 93 Me. 185, 44 Atl. 612; *Darling* v. *Hoban* (1884), 53 Mich. 599, 19 N. W. 545; *Mattlage* v. *McGuire* (1908), 59 Misc. Rep. 28, 111 N. Y. Supp. 1083; *Ferguson* v. *Jackson* (1902), 180 Mass. 557, 62 N. E. 965; *Brunswick Site Co.* v. *Berlin, etc., Printing Co.* (1915), (Sup.) 154 N. Y. Supp. 1069; *Gray* v. *Maier et al. Brewery* (1906), 2 Cal. App. 653, 84 Pac. 280; *Hotel Allen Co.* v. *Allen*

(1912), 117 Minn. 333, 135 N. W. 812; *Orr* v. *Double-day et al. Co.* (1916), 172 App. Div. 96, 157 N. Y. Supp. 1009; *Howell* v. *City of Hamburg Co.* (1913), 165 Cal. 172, 131 Pac. 130; 24 Cyc 1008; 16 R. C. L. §396. These decisions seem to be based on sound reasoning, as illustrated by the case of *Andrews* v. *Marshall Creamery Co., supra,* wherein the court said, on page 598:

"But an agreement for an option of renewal would seem to imply that the parties contemplated some affirmative act by way of the creation of an additional term. It is no doubt true that this affirmative act may be something different from, and less than, the execution of a new lease; for, when the tenant has indicated affirmatively the election to avail himself of the privilege of renewal, he has done all that is necessary to create a renewal, for the conditions under which the new term is to be enjoyed will be the same as those under which the first term was enjoyed, save as to the condition which provides for the renewal."

In 2 Underhill, Landlord and Tenant, §803, the author, in discussing the question under consideration uses the following language:

"In the absence of an express provision that a new lease is intended to be executed, the presumption is that no new lease is intended, but that the lessee is to continue to hold under the original lease. The lease must clearly and positively show that the making of a new lease was intended. This must appear from the express language of the parties. The reason for the presumption is the fact that the making of a new lease will involve trouble and expense which should be avoided by the courts, if possible, unless it is very clear that the parties had expressly agreed to incur

such trouble and expense. For if the new lease, as is always the case, when executed, is but a substitute for and a re-execution of the old lease, it is in no wise more efficacious or obligatory, nor does it confer any greater rights than the latter.''

While we have not been able to find any express declaration of the courts of this state for our guidance, it is significant that in the case of *Thiebaud* v. *First Nat. Bank, etc.,* and in the latter case of *C. Callahan Co.* v. *Michael,* cited *supra,* the courts did not mention the execution of a new lease as one of the essentials for a renewal, where the original lease fails to make such provision, although the questions there considered and determined would very naturally have led to such a declaration, had the courts entertained such view. Since the original lease in this case failed to make provision for the execution of a new lease on the exercise of the privilege for renewal, we conclude from reason, as well as from the authorities cited, that the execution of a new lease was not contemplated by the parties, and hence was unnecessary in the exercise of the privileges of the renewal given.

Having reached the conclusion that the only thing necessary to be done by appellee, in the exercise of the privilege of renewal given by the original lease, was to take some affirmative action, prior to its expiration, to indicate its election to be bound for the new term, in accordance with the provisions of the option, it only remains to be seen if such action was taken by appellee. It will be noted that it is alleged that more than five months before the expiration of the original lease appellee notified appellant ''that we are desirous of availing ourselves of the option contained therein regarding the renewal of the lease for a period of five years from April 30th,

1915." There is authority indicating that such notice is sufficient to constitute an election on the part of appellee to renew the original lease for the further term. *Hughes* v. *Windpfennig* (1893), 10 Ind. App. 122, 37 N. E. 432; *Crenshaw-Gary Lumber Co.* v. *Norton* (1916),111 Miss. 720, 72 South. 140, L. R. A. 1916 E 1227; *Coy* v. *Title Guaranty, etc., Co.* (1912), (D. C.), 198 Fed. 275. But in reaching our conclusion we have not relied solely upon such statement of appellee, as it appears from the answer, that appellee subsequently, on November 11, 1914, made the meaning which he intended to convey by such statement clear to appellant, by the use of the following language in a letter to his attorney of that date: "Mr. Thurston has our written communications, notifying him of our acceptance of the renewal for the further period of five years." From this time on appellant could not have been in doubt as to appellee's election to be bound for the further term, whatever may have been his impression on receipt of its first letter in that regard.

It should be noted that in the lease under consideration the lessor did not covenant to renew the lease, the language being that the lessee "shall have 3. the privilege of renewing this lease," etc., which implies that the affirmative act of election was the only thing necessary to give appellee the additional term. Under the original lease appellant parted with his right of possession, not only for a term of five years absolutely, but for a further term of five years at the election of appellee. Therefore no further agreement on appellant's part was necessary.

But appellant contends that the further term, being for a period of more than three years, is not enforce-

able in the absence of a new lease, because of the statute of frauds. We do not consider this contention well taken. The original lease provided

4.     for an absolute term and a contingent term, the latter to become absolute by renewal at the election of the lessee. When appellee made its election in writing to be bound for the additional term, the original lease fixed the rights of the parties, and the statute of frauds was thereby satisfied.

We conclude that the trial court did not err in overruling appellant's demurrer to appellee's answer. Judgment affirmed.

NOTE.—Reported in 117 N. E. 686. Landlord and tenant: covenants for renewal of leases, 123 Am. St. 460; right to hold over after expiration of lease with option for extension or renewal, without formally exercising option, 29 L. R. A. (N. S.) 174, L. R. A. 1916E 1232; holding over by tenant under lease giving option for renewal as exercise of option, 6 Ann. Cas. 341, 19 Ann. Cas. 339, Ann. Cas. 1915D 252. See under (1-4) 24 Cyc 999, 1002, 1008.