**F.W. WOOLWORTH CO.,**
**Appellant/Cross Appellee**
**(Defendant Below),**

v.

**PLAZA NORTH, INC., Appellee/Cross**
**Appellant (Plaintiff Below),**

**and**

**SCOA Industries, Inc. and Tonn and**
**Blank, Incorporated, Nominal**
**Appellees (Defendants Below).**

**No. 4684A149.**

Court of Appeals of Indiana,
Fourth District.

June 19, 1986.

Rehearing Denied July 31, 1986.

B. Guille Cox, Jr., Robert D. Hepburn, Cox, Zwerner, Gambill & Sullivan, Terre Haute, for appellant/cross appellee.

George A. Brattain, David I. Day, Jr., Marshall, Batman, Day, Swango & Brattain, Terre Haute, for appellee/cross appellant.

Wolfe, Frey, Hunt & Olah, Terre Haute, for nominal appellees.

MILLER, Judge.

In 1965 F.W. Woolworth Co., Inc. leased premises for a Woolco Department Store from Plaza North, Inc. at Plaza North's Shopping Center in Terre Haute, Indiana. The fifteen (15) year lease had a provision for five (5) successive options to extend the term of the lease up to five (5) years on each option. During the first option period, in January 1983, Woolworth closed its store and, after Plaza North's failure to exercise its right to terminate the lease within ninety (90) days, Woolworth sublet the premises to SCOA Industries for the operation of a Hills Department Store and notified Plaza North it was exercising its second and third options to extend the term of the original lease. In an action to determine the rights of the parties, the trial court granted a summary judgment in favor of Plaza North, finding that Woolworth did not have the right to exercise its second and third options, that the sublease expired at the end of the first five (5) year option terms, and that the percentage rent feature in the original Woolco contract was applicable to the sublease agreement thus requiring Woolco to pay rent based on the gross sales of SCOA, the sublessee.

After examining the language of the lease agreement we conclude that the trial court erred in finding that Woolworth did not have the right to exercise its second and third options, and that the percentage rent agreement was not applicable to the sublease.

### ISSUES

The parties raise the following issues:

1. Whether Woolworth had the right to extend the term of the lease after having notified Plaza North that it was ceasing operations and after Plaza North failed to exercise its option to cancel the lease.

2. Whether the April 15, 1983 attempt by Woolworth to exercise two options to extend the term of the lease was effective.

3. Whether the contract between Woolworth and SCOA is a sublease or an assignment.

4. Whether Plaza North is entitled to percentage rent for use and occupancy of its premises based upon the same calculations agreed upon in lease Article 5A.

### FACTS

On April 6, 1965, Plaza North, Inc. leased the subject premises, which are part of

Plaza North Shopping Center in Terre Haute, Indiana to F.W. Woolworth Co. for use as a Woolco Department Store. The lease provided that Woolworth pay an annual minimum rent of $113,297.00 in equal monthly installments, that Woolworth would pay to Plaza North a percentage rent based on Woolco's annual gross sales, that the lease term would expire on January 31, 1982, and that Plaza North granted Woolworth five successive options to extend the term of the lease up to five years on each such option. The lease further provided that Woolworth could discontinue the operation of its Woolco store and, upon discontinuance, Woolworth's obligation to pay percentage rent would cease, and that, in case of discontinuance of Woolco operations, Plaza North had an option to cancel the lease agreement. Finally, the lease stated Woolworth had the right to sublease all or part of the premises subject to certain restrictions.

Woolworth opened a Woolco in 1966 and, by a letter dated July 11, 1980, exercised a 5-year extension of its lease term which extended its leasehold to January 31, 1987.

In 1982 Woolworth decided to close all of its Woolco stores nationwide. Woolworth notified Plaza North by letter dated October 4, 1982 that it planned to discontinue operation of its Plaza North Woolco in the near future. The lease allowed Plaza North 90 days from the notice of discontinuation to terminate the lease with Woolworth. If Plaza North did not exercise its option to terminate, Woolworth, upon vacation of the premises, would be liable only for the minimum rent for the remainder of the term of the lease.

Woolworth discontinued the operation of its Plaza North Woolco on January 22, 1983. On January 29, 1983, Plaza North notified Woolworth that, while it had missed its 90-day option date by about three weeks, it still wished to exercise its right to terminate the lease. Woolworth responded that Plaza North had missed its 90-day deadline, that Woolworth did not want the lease terminated, and that Woolworth was negotiating to sublease the premises to SCOA Industries, Inc.

Eventually, on April 15, 1983, Woolworth and SCOA entered into an agreement entitled "sublease." The stated expiration date of the sublease is January 30, 1997 with two options on the part of SCOA to extend for five years each. Also on April 15, 1983 Woolworth mailed a letter notifying Plaza North that it was exercising the second and third options to extend the term of the original lease.

Plaza North, after receiving notification from Woolworth of the extensions, attempted to determine the terms of Woolworth's agreement with SCOA. Woolworth refused to disclose the terms. Plaza North then filed a complaint for injunction and declaratory judgment, asserting that the Woolworth/SCOA "sublease" was really an assignment which was in violation of the overlease. Plaza North asked the court for a judicial declaration of the rights of the parties to the lease and sublease.

The trial court concluded: (1) that Woolworth did not have the right to exercise its options to extend the term of the lease after it ceased operations and thus the lease expires on January 31, 1987, the expiration date (exclusive of options to extend) when it ceased operations; (2) Woolworth's agreement with SCOA was a valid sublease, but only conveyed a term to expire on January 31, 1987; and (3) that Plaza North had the right to receive percentage rent based on the amount of gross sales in the premises, substituting SCOA's or any other tenant's sales for those sales by Woolco in making such calculations.

## DECISION

It is a general rule that the intention of the parties to a contract is to be determined from the "four corners" of the document. *Shrum v. Dalton* (1982), Ind.App., 442 N.E.2d 366. Absent any ambiguity, the court will not construe the contract. *Reeder v. Ramsey* (1984), Ind.App., 458 N.E.2d 682. Rather, where the terms of the contract are plain and clear on the face of the document, such terms are conclusive as to

the meaning of the contract and the court will apply the contract's provisions according to the plain language of the document. *Young v. Van Zandt* (1983), Ind.App., 449 N.E.2d 300, 307. Thus, we focus on the language found in the lease and sublease.

### I. *Woolworth's Right to Extend the Lease After Ceasing Operations*

 Plaza North argues, and the trial court concluded, that cessation of operations by Woolworth precluded the exercise of any options to extend. Woolworth counters that there is nothing in the lease that hinges its options to extend on the continued operation of its Woolco store. We have examined the lease and are compelled to agree with Woolworth. The pertinent provisions of the lease are as follows:

Article 3 "To have and to hold the same for the term to commence on the date of delivery of the demised premises as in this lease provided, and end on the last day of January, 1982, at midnight, unless sooner terminated or extended as herein provided."

Article 29 "The Landlord agrees that the Tenant shall have and is hereby granted 5 successive options to extend the term of this lease for any period of time not exceeding 5 years on each such option, such extended term to begin respectively upon the expiration of the term of this lease or of this lease as extended and *all the terms, covenants and provisions of this lease shall apply to each such extended term* with the exception, however, that the Tenant shall not have any further option to extend the term of this lease following the exercise, if any, of the 5th option to extend. If the Tenant shall elect to exercise the aforesaid options it shall do so by giving to the Landlord notice in writing of its intention to do so *not later than* one (1) year prior to the expiration of this lease or this lease as extended." (Emphasis added.)

Article 3 provides the term of the lease goes to January 31, 1982 unless extended or earlier terminated. It does not state "or unless Woolworth ceases operations." Ar-

ticle 29 provides that all lease terms apply to extended terms except that Woolworth cannot extend after the fifth option. It makes no reference to Woolworth ceasing operations.

Nor is there any language in Articles 5 or 5A that limits Woolworth's options to extend. Article 5, quoted *infra*, fixes minimum annual rent at ·$113,297.00, while the first part of Article 5A sets a schedule for percentage rent. The second part of Article 5A governs cessation of operations and provides in pertinent part as follows:

"Should the Tenant at any time elect to discontinue the operation of its store, the Tenant shall give to the Landlord notice in writing of its intention so to do and in such event the Landlord shall have one option to be exercised by notice in writing given to the Tenant within ninety (90) days after the date of mailing of the Tenant's aforesaid notice to the Landlord, to cancel and terminate this lease. If the Landlord exercises its said option, this lease shall cancel and terminate on the last day of the month next following the end of said ninety (90) day period and the Tenant shall be released from any further liability under this lease.

Should the Landlord fail to exercise its said option and should the Tenant at any time thereafter discontinue the operation of its said store then and in any such event, anything in this lease to the contrary notwithstanding it is hereby mutually agreed that the rent which Tenant shall pay to the Landlord during the remainder of the term of this lease shall be the rent more particularly set forth in said Article 5, and the word 'minimum' in said Article 5 shall be deemed deleted. Upon the discontinuance of the operation of said store, all of the covenants and provisions contained in the preceding paragraphs of this article shall be of no further force and effect."

Nothing in Article 5A says that remaining unexercised options to extend are no longer valid when operations cease. We conclude the trial court erred. The lease is clear and unambiguous. Upon cessation of

operations by Woolworth, Plaza North has a 90-day option to cancel the lease. If it does not, as in this case, the lease remains in effect except for the percentage rent provisions. The parties' own words in the form of the lease do not place any limitation on Woolworth's options to extend the term of the lease after ceasing operations. Woolworth was within its rights when it chose to exercise its options after ceasing operations.

## II. Effectiveness of Woolworth's Attempt to Exercise Its Options to Extend the Term of the Lease

▉ As discussed above, Woolworth's options to extend the lease were not affected by the ceasing of its operations. The lease was still in force except the provisions relating to percentage rent. Article 29 places only two limitations on Woolworth's right to extend the lease term. First, no extension is allowed after the fifth option has been exercised. Second, notice must be sent to Plaza North *no later than one year* prior to expiration of the term.

Woolworth had previously exercised one 5-year extension and its present term was to expire on January 31, 1987. It notified Plaza North of its decision to exercise two more extensions by letter dated April 15, 1983 and received by Plaza North on April 21, 1983. This notice was well before January 31, 1986 which was one year prior to expiration of the lease. Consequently, it was effective.

## III. Woolworth/SCOA Agreement—Sublease or Assignment?

▉ The trial court concluded the Woolworth/SCOA agreement was a sub-

lease and not an assignment. This distinction is crucial because the overlease forbids an assignment without the consent of the landlord, but does not forbid Woolworth from subleasing the premises.[1] Plaza North argues the trial court erred, the Woolworth/SCOA agreement was an assignment, and that Woolworth, by having breached the covenant not to assign, forfeited its rights under the lease.

The distinction between an assignment and a sublease was explained by our supreme court in *Indianapolis Manufacturing & Carpenters Union v. Cleveland C., C., & I Ry.Co.* (1873), 45 Ind. 281:

> "By an assignment of the lease, the lessee would transfer to the assignee all his interest in the lease. A sub-letting vests only a partial estate in the under-lessee, a reversion being left in the lessor, the duration of which is immaterial, for it may be a year, a day, an hour."

*Id.* at 287. Here, the sublease on its face expires January 30, 1997, unless extended or sooner terminated. The overlease (assuming Woolworth's April 15, 1983 exercise of options to be effective) expires on January 31, 1997, unless again extended. Woolworth argues this is a classic common-law sublease for a period one-day shorter than the lease. Under this theory, Woolworth has not breached its covenant not to assign, no forfeiture occurs, and the sublease is valid.

Plaza North, however, posits a different theory. It contends that at the moment Woolworth and SCOA executed their agreement on April 15, 1983, the overlease expiration date was January 31, 1987. Since the sublease term extends nine years and three hundred sixty-four days beyond

---

1. Article 15 reads in pertinent part:
"Except as hereinafter provided, the Tenant agrees not to assign, mortgage, pledge or encumber this lease without first obtaining the written consent of the Landlord.... The Tenant is hereby given the right to assign this lease to a corporation substantially all of the stock of which is owned by the Tenant, and to sublet the demised premises or any part thereof, but not withstanding such assignment or subletting the Tenant shall continue liable for the performance of the terms, conditions and covenants of this lease. The Tenant agrees that Tenant will not without the prior written consent of the Landlord, which consent the Landlord agrees not unreasonably to withhold, sublet to a supermarket so long as Standard Supermarket occupies and continues doing business in the space designated 'Standard Supermarket' on the drawing attached to and made a part of Schedule 'A' hereof."

that date, Plaza North argues it is an assignment. Plaza North continues that such assignment is invalid, Woolworth having failed to obtain permission from Plaza North, and Woolworth has forfeited its rights under the lease.

The question before us, then, is to decide what type of leasehold Woolworth possessed and whether it conveyed its entire leasehold to SCOA which would constitute an assignment.

The contract language itself gives Woolworth the right to five extensions of five years each in addition to its original 17-year lease. We read this to give Woolworth a fixed term of 17 years and an optional term of 25 years. While no Indiana cases have addressed this exact issue, we find support in *Thurston v. F.W. Woolworth Co.* (1917), 66 Ind.App. 26, 117 N.E. 686. *Thurston* involved a lease which gave the lessee "the privilege of renewing this lease for a further period of five years." *Id.* at 28, 117 N.E. at 686. The court held the lessee had "an absolute term and a contingent term." *Id.* at 36, 117 N.E. at 688, the contingent term being a vested right to renew for an additional five-year period.

Similarly, in *Gordon v. Tennant* (1940), 108 Ind.App. 326, 26 N.E.2d 559, a sublease extended far beyond the original lease term (exclusive of options to extend), but was still a sublease because it was implicit that those options would or could be exercised so as to exceed any potential term of the lease. The court also stated, "The right to continue in possession for an additional term is not a privilege to renew the lease but is merely a continuation of the original lease." *Id.* at 331, 26 N.E.2d at 561.

Caselaw in other jurisdictions has held that an option to extend the term of a lease is an interest for purposes of determining whether an agreement is a sublease or an assignment. In *In re Lafayette Radio Electronics Corp.* (E.D.N.Y. 1981), 9 B.R. 993, the court concluded that, even though the sublease term exceeded the lease term, it was still a sublease and not an assignment because the tenant/sublessor had a

vested option to extend beyond the sublease term. The court said:

> "In the case at bar, the prime lease terminates on June 30, 1988, and the five year option term ends on June 30, 1993. The purported sublease terminates on June 29, 1993. As a result, the debtor [tenant] *has not conveyed its entire interest* under the prime lease since the debtor's interest in the demised premises will revert to the debtor on June 29, 1993. Therefore, the Court finds that the agreement between the debtor and Sublime constitutes a sublease."

*Id.* at 999 (emphasis added).

Similarly, in *Flynn v. Bachner* (1912), 168 Mich. 424, 134 N.W. 451, the court held that a lease for three years with vested rights for two years was a present demise for five years. Thus, any sublease could be entered into for a term up to five years. *See also Texas Co. v. Adelman* (1939), 186 Okla. 663, 99 P.2d 874, where the court held that a tenant who subleases for a term extending into an option period under a lease impliedly convenants with its subtenant to exercise options of sufficient duration to cover the sublease.

Here, the contract gives Woolworth an absolute term until 1987 and a contingent term until 2007 at its option. Woolworth did *not* convey its entire interest to SCOA. The agreement granted SCOA the rights to the premises until January 30, 1997, with two five-year options to extend the term of the lease. Woolworth thus transferred the remainder of its absolute term and a portion of its contingent term. But it retained, at the very least, a contingent term of one day. This meets the classic definition of a sublease, *Indianapolis Manufacturing & Carpenters Union, supra*, as Woolworth did not transfer its entire interest in the overlease.

Under the contract, Article 15, Woolworth had the right to sublet the premises within certain limitations. The SCOA agreement is within these limitations, is valid, and no breach has occurred. Plaza North is not entitled to forfeiture. The trial court was correct in finding the

Woolworth/SCOA agreement to be a sublease, but mistaken in concluding the sublease was only valid until January 31, 1987. We conclude the sublease to be valid as written.

### IV. Plaza North's Right to Percentage Rent Based on SCOA's Sales

The trial court concluded the lease gave Plaza North the right to receive percentage rent from Woolworth based on SCOA's sales after the sublease goes into effect. Woolworth argues this is contrary to the language of the lease and contends it is liable for base rent only upon ceasing operations.

██ Rent and percentage rent are governed by Articles 5 and 5A, which provide in pertinent part as follows:

"ART. 5. The Tenant agrees to pay to the Landlord the annual minimum rent of: One Hundred Thirteen Thousand Two Hundred Ninety-Seven ($113,297.00) Dollars,

(unless such rent shall be abated or diminished as in this lease elsewhere provided) in equal monthly installments on the 15th day of each and every month during the term hereof.... (App. p. 1).
ART. 5A. On or before the first day of February following each full calendar year of the term of this lease (the first such calendar year to begin with January first of the year following the year in which this lease term commences), the Tenant agrees to mail or deliver to the Landlord a statement sworn to by one of its accountants, showing the sales (computed as hereinafter provided) made by F.W. Woolworth Co. and its licensees in its store in the demised premises during the preceding calendar year.

Should the sum of
(a) 1½% of the first $10,000,000.00, and
(b) 1% of the remainder of said sales (i.e. over $10,000,000.00)

exceed the annual minimum rent payable for the same period covered by such statement, Tenant agrees that it will forthwith pay to the Landlord, as per-

centage rent due hereunder, a sum equivalent to such excess.

\* \* \* \* \* \*

Should the Tenant at any time elect to discontinue the operation of its store, the Tenant shall give to the Landlord notice in writing of its intention so to do and in such event the Landlord shall have one option, to be exercised by notice in writing given to the Tenant within ninety (90) days after the date of mailing of the Tenant's aforesaid notice to the Landlord, to cancel and terminate this lease. If the Landlord exercises its said option, this lease shall cancel and terminate on the last day of the month next following the end of said ninety (90) day period and the Tenant shall be released from any further liability under this lease.

Should the Landlord fail to exercise its said option and should the Tenant at any time thereafter discontinue the operation of its said store then and in any such event, anything in this lease to the contrary notwithstanding, it is hereby mutually agreed that the rent which Tenant shall pay to the Landlord during the remainder of the term of this lease shall be the rent more particularly set forth in said Article 5, and the word 'minimum' in said Article 5 shall be deemed deleted. Upon the discontinuance of the operation of said store, all of the covenants and provisions contained in the preceding paragraphs of this article shall be of no further force and effect."

These provisions clearly state that if Plaza North does not choose to exercise its option to cancel the lease after receiving notice that Woolworth is ceasing operations, Article 5 is amended to read as follows:

"The Tenant agrees to pay to the Landlord the annual rent of: One Hundred Thirteen Thousand Two Hundred Ninety-Seven ($113,297.00) Dollars...."

Also, those portions of Article 5A requiring the payment of percentage rent are deleted from the lease and have "no further force and effect." No provision of the lease

supports the trial court's conclusion that Plaza North is entitled to receive percentage rent from Woolworth based on SCOA's sales. We will not rewrite the contract for the parties but will apply the contract's provisions according to the plain language of the document. *Young v. VanZandt, supra.* Here the parties agreed that Woolworth would not be liable for percentage rent upon cessation of its operations.

■ Plaza North argues that in a lease agreement to pay percentage rent, the lessee has impliedly agreed to act in good faith so as not to deprive the lessor of his percentage rent. *See Goldblatt Bros., Inc. v. Addision Green Meadows, Inc.* (1972), 8 Ill.App.3d 490, 290 N.E.2d 715; *William Berlund Realty Co. v. Hahne & Co.* (1953), 26 N.J.Super. 477, 98 A.2d 124. We agree, but conclude there has been no allegation that Woolworth has acted in any manner so as to indicate bad faith. The undisputed facts indicate that in late 1982, during a severe economic climate, Woolworth made a decision to close its Woolco stores nationwide. There is no indication this decision was in anyway based on the percentage rent clause in its lease with Plaza North. Woolworth's action was not taken to deprive Plaza North of percentage rent but was a large scale business decision. We conclude there is no evidence of bad faith and the trial court erred in finding that Plaza North was entitled to percentage rent based on SCOA's sales.

In conclusion, we have examined the lease contract entered into by the parties and conclude there is no provision in the lease that limits Woolworth's vested rights to extend the term of the lease after it ceases operations and Plaza North fails to cancel the lease. Woolworth's action of notifying Plaza North by letter dated April 15, 1983, that it was exercising two of its remaining four options to extend the term of the lease was effective. The agreement entered into by Woolworth and SCOA was a valid sublease as Woolworth reserved a portion of its contingent term. Finally, we conclude Woolworth is not liable for any percentage rent to Plaza North based on

SCOA's sales as no provision of the lease supports this conclusion.

The trial court is affirmed in part, reversed in part, and directed to grant Woolworth's motion for summary judgment.

YOUNG, P.J., and CONOVER, J., concur.