## MORTON v. NOBLE.

MORTGAGE.—WIDOW'S ESTATE IN LANDS OF HUSBAND.—Prior to *May* 6, 1853, *A* executed a mortgage upon certain real estate to *B*, his wife not joining, to secure the payment of certain sums of money then due from *A* to *B*, and of all sums which might thereafter become due. *A* died in 1858, leaving a widow. One-third of the mortgaged land was afterwards set off to the widow. *B* then foreclosed his mortgage and had a decree for the sale of the other two-thirds to pay the indebtedness which existed at the date of the mortgage, and which accrued after *May* 6, 1853, and it was sold and the proceeds were only sufficient to pay that part of the debt which existed at the date of the mortgage. *B* claims a right to subject the widow's third to the payment of the subsequent indebtedness, on the ground that her dower estate in the land was abolished by the legislature, and her contingent fee therein never attached by reason of the mortgage.

*Held*, that, under the circumstances, *B* had no claim under the mortgage upon the third set off to the widow.

APPEAL from the *Wayne* Common Pleas.

PERKINS, J.—On the 25th of *February*, 1853, *Thomas G. Noble* was the owner of a certain tract of land in *Wayne* county, *Indiana*. He was the husband of *Rhoda Noble*, a second wife, by whom he had children living, and who, with their mother, still survive. On the day above named said *Thomas G. Noble* executed, his wife not joining therein, a mortgage on the tract of land above mentioned to *Wm. S. T. Morton*, to secure him "in the payment of all sums now due, or which may hereafter be due him from said *Noble*, and from all liabilities for him now or hereafter," &c.

We say the instrument was a mortgage because both parties so treated it. *Noble* became indebted to *Morton* in a given sum, prior to *May* 6, 1853. He became indebted to him in a given sum afterwards. In *February*, 1858, *Thomas G. Noble*

Morton v. Noble.

died, leaving his wife, *Rhoda*, and children by her, surviving, and leaving some debts, secured by the mortgage in question, unpaid.

In 1861, *Morton* proceeded to foreclose the mortgage; the Court ordered two-thirds of the land, one-third having been set off to the widow, to be sold on the mortgage. Those two-thirds sold for a sum sufficient to pay the debts *Thomas G. Noble* owed to *W. S. T. Morton* on the 6th day of *May*, 1853; but left those contracted after that date, unpaid. *Morton* now claims that the remaining third of the land, that set off to *Mrs. Rhoda Noble*, shall be sold to pay the debts contracted by her husband, *Thomas G. Noble*, after the 6th of *May*, 1853.

He makes this claim on the ground that *Noble* mortgaged the entire tract of land, subject to the dower right of his wife, prior to *May* 6th, 1853; that, on that day, her dower was abolished, and, hence, the entire right in the land vested, under the mortgage, in *Morton*. *Talbott* v. *Armstrong*, 14 Ind. 254, and cases cited, are relied on. The mortgage in question was executed to secure future advances unlimited as to amount and without specification as to time. While mortgages to secure future advances may be valid as between the parties, and also against subsequent creditors with notice, it is said by *Kent*, in his Com., vol. 4, p. 176, that it is necessary to the validity of such mortgages against subsequent creditors, "that the agreement, as contained in the record of the lien, should give all the requisite information as to the extent and certainty of the contract, so that a prior creditor may, by inspection of the record, and by common prudence and ordinary diligence, ascertain the extent of the incumbrance." See 1 Hilliard on Mort. 285, *et seq.*

But the mortgagee is no longer, in our law, regarded as the owner of the land mortgaged. In the early period of the common law, the mortgagee was the owner, but subject to

Morton *v.* Noble.

have his title divested by the strict performance of a condition by the mortgagor.   Later, the mortgagor acquired the right in equity to redeem in a time undefined, after failure to perform the specified condition on the day.   Later, the mortgagee acquired the right to foreclose the equity of redemption; and this is a right which, according to *Story*, the mortgagee can not waive by an executory contract.   2 Story's Eq., § 1019.

*Noble*, then, after having mortgaged the land in question, remained the owner, subject to the mortgage; and, as his wife did not join in the mortgage, subject, also, to her dower-right in the premises.   *Morton's* interest was an equitable interest to the amount of his unpaid advances to *Noble*.   But *Morton's* equity was inferior to the equity of *Mrs. Noble*, and, on the 6th day of *May*, 1853, he had no interest in the land which it required any part of *Mrs. Noble's* third of the land to satisfy.   At that date the legislature changed her inchoate interest in the land from a contingent life estate into a contingent fee.   That enlarged right attached to the land so far as it was not curtailed by prior equities.   This, it was competent for the legislature to ordain.   We have seen that no equities then existed preventing the attaching of her enlarged right. See *Noel* v. *Ewing*, 9 Ind. 38.   We think this is the plain equity of the case.   *Morton* is not wronged.   He took the mortgage without *Mrs. Noble's* signature.   He knew that, on the 6th of *May*, 1853, the legislature abolished her dower, a life estate, but at the same instant created in her a contingent fee.   He, at that time, was safe in the advancements he had made; and as to them, we may admit, for the purposes of this case, that he might have held the land, under the cases of *Strong* v. *Clem*, 12 Ind. 37, and *Frantz* v. *Harrow*, 13 *id.* 507. But they were satisfied without encroaching upon the share of the wife.   In the case at bar, *Noble* still continued the owner of the land, and the right of his wife continued to

exist therein, except as to *Morton's* equity in the interest of her husband.

However it might have been as between *Morton* and junior creditors of *Noble*, who might have obtained liens, we are clear that a mortgage by the husband, such as that executed in this case, should not operate, under the circumstances of this case, to bar the right of the wife to her third of the land. See *Davis* v. *Stonestreet*, 4 Ind. 101; *Reasoner* v. *Edmunson*, *id*. 393.

*Per Curiam*.—The judgment below is affirmed, with costs.

*J. S. Newman*, *J. F. Kibbey* and *J. P. Siddall*, for the appellant.

*Peelle & Wilson*, for the appellee.