## THE INDIANAPOLIS MANUFACTURING AND CARPENTERS UNION *v.* THE CLEVELAND, C., C., AND I. RAILWAY COMPANY.

PRACTICE.—*Appeal from Superior Court.—Assignment of Error.*—On an appeal from a superior court, assigning for error that the court in special term erred in overruling a motion for a new trial, and in finding for appellee and rendering judgment upon insufficient evidence, or that the finding and judgment is contrary to law, in this, that the complaint is insufficient in law, presents no question for review in the Supreme Court.

SAME.—On an appeal from a superior court, assigning for error that the court in general term erred in affirming the ruling and judgment of the court in special term, to which action, opinion, and judgment in general term the appellant at the time excepted, presents for review in the Supreme Court any error that was properly assigned in the general term of the superior court.

SAME.—On an appeal from a superior court, if the appellant has assigned for error in general term, that the complaint did not state facts sufficient to constitute a cause of action, an assignment of error in the Supreme Court, that the general term erred in affirming the judgment of the special term, presents the question of the sufficiency of the complaint.

PLEADING.—*Complaint for Possession of Real Estate.—Sufficiency of Description.*—In an action to recover the possession of real estate, if the real estate can be identified from the description in the complaint, the description will be sufficient.

SAME.—*Notice to Quit and Demand.*—Where in such case the relation of landlord and tenant does not exist, it is not necessary that there should be notice to quit and demand of possession and surrender of the premises.

LEASE.—*Assignment of.*—Where the lessee of real estate, by an agreement with another, sold the right to use and possess the real estate as long as the lessee could, the rent to be paid to the lessee, and he to pay the lessor; *Held,* that the arrangement was, in legal effect, an assignment of the lease.

The I. M. and C. Union *v*. The C., C., C., and I. R. W. Co.

AGENT.—*Authority*.—The mere power to collect rent does not confer authority to make a new lease or change an existing one.

LANDLORD AND TENANT.—*Assignment of Lease.*—*Estoppel*.—Where a lease contains a clause against an assignment of the lease without the written consent of the landlord, if the lease is assigned without such consent, the assignee is chargeable with notice of the terms of the lease, and if the landlord does not accept rent for occupancy of the premises after assignment, he will not be estopped from claiming a forfeiture of the lease by reason of the assignment.

From the Marion Superior Court.

*J. Hanna* and *F. Knefler*, for appellant.

*J. T. Dye* and *A. C. Harris*, for appellee.

BUSKIRK, J.—This action was brought by the appellee to recover of the appellant the possession of the real estate described in the complaint. The appellant answered by the general denial. Trial by the court and finding for appellee. The appellant filed motion and reasons for a new trial as follows:

1st. That the finding and judgment of the court is not sustained by sufficient evidence.

2d. That the finding and judgment of the court is contrary to law.

3d. That the complaint herein is wholly insufficient in law.

The motion was overruled, and an exception taken.

Appeal to the general term, where the following errors were assigned:

1. Error of the court in special term in overruling motion for a new trial.

2. Error of the court in finding for appellee, and in rendering judgment for appellee, upon insufficient evidence.

3. That the finding and judgment of the court is contrary to law, in this, that the complaint of appellee is wholly insufficient in law.

The court in general term affirmed the judgment of the special term.

The appellant has assigned for error here the following:

1st. Error of the court in special term in overruling the motion for a new trial.

2d. Error of the court in finding for appellee, and in rendering judgment for appellee upon insufficient evidence.

3d. That the finding and judgment of the court is contrary to law, in this, that the complaint of appellee is wholly insufficient in law.

4th. Error of the court in general term, in affirming the ruling, opinion, and judgment of the court in special term, to which action, opinion, and judgment in general term the appellant at the time excepted.

The first three assignments of error present no question for review here, as they relate to the action of the court in special term. In *Wesley* v. *Milford*, 41 Ind. 413, we held that whatever errors are assigned on appeal from the superior court in general term to the Supreme Court must be predicated upon the assignment of errors in the general term and the action of that court in such term thereon.

The fourth assignment of error presents for review here every error that was properly assigned in the general term of the superior court.

In *Wesley* v. *Milford, supra*, it was held, that on appeal from the superior court, it could not be assigned for error here, as it could on appeal from the circuit or common pleas court, that the complaint did not contain facts sufficient to constitute a cause of action; but it was further held, that the question as to the sufficiency of the complaint might be presented in the general term, although it was not presented or raised in any way in the special term, and that such question might be raised in the general term by an assignment of error that the complaint did not contain facts sufficient to constitute a cause of action, just as the same question is presented in this court on an appeal from a circuit court to this court. The appellant having assigned for error in general term, that the complaint did not state facts sufficient to constitute a cause of action, the assignment of error here that the general term erred in affirming the judgment of special term presents the sufficiency of the complaint for our decision.

Two objections are urged to the complaint. First, that the property is not sufficiently described. It is averred in the complaint that the plaintiff " is the owner in fee simple, and is entitled to the immediate possession, of the following described property, situated in Indianapolis, Marion county, Indiana, to wit : commencing at a point one hundred and seven feet east of the north-west corner of said railway company's office, located at the foot of Maryland street on Alabama street, in the city of Indianapolis, Marion county, Indiana, and running thence south fifty-eight feet, thence east one hundred and eighty-two feet, thence north fifty-eight feet, thence west one hundred and eighty-two feet to the place of beginning, containing ten thousand five hundred and fifty-six square feet, and lying east of said railroad company's office, and between said office and New Jersey street, being in square No. 77, in said city and State aforesaid."

It is suggested by counsel for appellant, that the description is not sufficient to enable the sheriff to find and locate the property. We see no difficulty in identifying the property from the description given in the complaint. We think the description sufficient. No authority is cited, and we think none could be, holding such a description insufficient.

It is, in the second place, urged that the complaint does not aver any demand for the possession of the property before the commencement of the action. No notice to quit and surrender up the possession was necessary, unless the relation of landlord and tenant existed between the parties. *Meeker* v. *Doe*, 7 Blackf. 169. It does not appear from the complaint that such relation existed.

In our opinion, the complaint is good.

We proceed to inquire whether the finding is sustained by the evidence.

It was admitted on the trial, as appears from the bill of exceptions, that the appellee was the owner of the property in fee simple, but the appellants claimed the right of possession under Warren Tate, who claimed by virtue of a lease from the appellee.

On the 1st day of April, 1871, the appellee by her president executed to Tate a written lease of the premises in controversy for one year, subject to be determined within the year by a ninety days' written notice; and it was further stipulated that in case Tate should, by either tacit or express permission, hold over beyond the expiration of one year, his tenancy should continue subject to the option of the lessor, to terminate the same upon ninety days' written notice.

The lease contained this further provision: " It is further agreed that the party of the second part shall not assign this lease or sub-let any portion of the said premises without the written consent of the party of the first part, and that a violation of this agreement on his part shall vacate this lease."

It is conceded that the lease was not terminated by the lessor by giving ninety days' notice as prescribed therein. Nor was there any assignment of the written lease, by the lessee to the appellant, but it is contended by the appellee that there was an equitable assignment of the lease, and that there was a sub-letting of the premises.   On the other hand, it is insisted by counsel for appellant, that there was neither a legal nor equitable assignment of the lease or a sub-letting of the premises, but that the arrangement between Tate and the appellant only amounted to a license on the part of the lessee that the appellant should occupy the premises under him.   The principal and controlling question in the case is, as to the legal effect of the arrangement made by and between Tate and the appellant.   The material facts as they appear of record are: Tate occupied the leased ground as a lumber yard until January 1st, 1872, and on that day sold out his business to the defendant and put her in possession of that ground, as well as his factory adjoining thereto. Tate on the 12th day of January, 1872, paid one hundred and fifty dollars, the rent due to the 31st of December, 1871, and at that time notified Bush, the agent of the appellee, to whom he made the payment, of the arrangement with appellant.   Tate testified that Bush told him he had no authority to make a new lease to appellant, but that he presumed it

would make no difference to the railroad company who occupied the ground, so that the rent was paid and possession given at the expiration of a ninety days' notice. The appellant continued to use the premises for a lumber yard, and was in possession, under the agreement with Tate, at the commencement of the suit, October 23d, 1862. Tate further testified that the appellant was to pay him the same rent he had contracted to pay the appellee, and *it* was stipulated between him and appellant that the latter should surrender possession to the railroad company at the expiration of ninety days after receiving written notice of the termination of the lease. It was also shown that on October 20th, 1872, Tate tendered to appellee two hundred dollars, which would be in full of rent to January 1st, 1873, at the price fixed by the lease, but the tender was refused.

Gaylord M. Bush, the person to whom the one hundred and fifty dollars rent was paid, was called as a witness by the appellee. He testified, in substance, that shortly before and at the time he received the rent due December 31st, 1871, Tate told him that he had parted with his interest in the premises to other parties, and that he hoped that he, witness, would continue to let the parties to whom he had sold occupy the ground. To this Bush replied that he did not know what the company would do in that particular; that the lease provided its own terms, and that to have it arranged, it would be necessary to have such agreement with the president of the road; that he, Bush, was only an agent, acting under instructions, but did not know anything to the contrary, but that they might be satisfied to continue the lease to these parties, but that it must be understood that he would not do it himself, and that what he might say was unofficial. This witness further stated that he knew from that time forward that defendant was in the use and occupation of the ground, but there is no evidence that the president of the railway, or any officer of the company, had such knowledge, and, of course, no proof of consent to the transfer of the premises

by Tate to the appellant, unless it is to be inferred from Bush's knowledge and acquiescence.

C. F. Reasener, president of the appellant, testified that "when the defendant bought out Tate, it was with the agreement that she should use said ground as long as Tate could. We bought out his use of the ground. Defendant would have the right to use and possess the ground in controversy in like manner as Tate did, defendant to pay the rent to Tate; in short, the defendant to succeed to and have the same rights to the ground that he, Tate, had before he sold to the defendant, the rent to be paid to Tate, and he to pay the plaintiff the rent; the defendant had nothing to do with the plaintiff. This was the agreement between the defendant and Tate."

It is provided in the lease that the lessee shall neither assign the lease nor sub-let any portion of the premises without the written consent of the lessor, and that a violation of such agreement should vacate the lease. By an assignment of the lease, the lessee would transfer to the assignee all his interest in the lease. A sub-letting vests only a partial estate in the under-lessee, a reversion being left in the lessor, the duration of which is immaterial, for it may be a year, a day, an hour. Taylor Landlord & Ten. 81, sec. 109.

The same author, in section 108, p. 80, says: "Not only has the owner of the soil a right to make a lease, but his tenant, so long as his interest lasts, has also a right to underlet to any person he may think proper, without consulting the landlord; for, while his interest in the premises continues, he has the absolute disposition of it, unless some agreement subsists between him and the landlord, that limits his power to do so."

The same author, in section 403, p. 313, says: "Covenants of this description are construed by courts of law with the utmost jealousy, to prevent the restraint from going beyond the express stipulation. If, therefore, the lessee covenants not to assign, transfer, set over, or otherwise do, or put away, the lease or premises, it does not prevent him from under-

letting. Nor will a covenant 'not to let or under-let the whole or any part' of the demised premises preclude an assignment of the whole interest. But a condition not to set, let, or assign over the demised premises, or any part thereof, comprehends under-leases; and where the condition was, not to let or assign the premises, or any part thereof, a lease by the tenant, which fell short of his term by only one day, was held to be a breach of the condition. So a covenant not to let, set, or demise the premises, or any part thereof, for all or any part of the term, restrains an assignment. And where the proviso in the lease was, that 'if the lessee, his executors, or administrators, did or should assign, or otherwise part with, the lease or premises thereby granted, or any part thereof, for the whole or any part of the term thereby granted, to any person or persons whomsoever, without the license and consent, in writing, of the lessor, first had and obtained for that purpose, the lessor might re-enter;' and the lessee entered into an agreement with another person, to grant him a lease of the premises for the residue of the term, reserving a few days under which possession was given, Lord ELLENBOROUGH held that the words of the proviso included an under-lease, and that, consequently, such under-lease was a breach of the proviso."

In our opinion, the arrangement between Tate and the appellant was, in legal effect and practical operation, an assignment of the lease. It is true there was no formal assignment of the lease, but there was an equitable transfer of it. The president of the appellant testified: "We bought out his use of the ground. The defendant would have the right to use and possess the ground in controversy, in like manner as Tate did." No greater right could have been enjoyed, had there been a formal and regular assignment of the lease and premises. The purpose of the stipulation in the lease was to reserve to the lessor the right to say who should occupy the premises. The transfer was made without consulting the lessor. It was testified by the chief officer of the appellant, that "the defendant had nothing to do with the plaintiff."

Tate was to receive the same rent from appellant that he paid to appellee. The position contended for by the appellant, that the arrangement only amounted to a license to occupy the premises, is an attempt to create a distinction in name and not in substance. The practical effect was the same. By the stipulation in the lease, Tate was prohibited from placing any other person in possession of the premises without the written consent of the lessor. By the arrangement, he sold with his factory the right to use the premises, and placed the appellant in the possession thereof, who was to use and occupy the ground in the same manner that Tate did under the lease.

It is, however, insisted by counsel for appellant, that Bush, the agent of the appellee, consented to the transfer. The evidence does not show that Bush had any agency or authority in the premises, except to collect from Tate the rent due December 31st, 1871. The mere power to receive or collect rent does not confer authority to make a new contract or change an existing one.

Besides, it was expressly provided in the lease, that the consent to assign the lease or sub-let the premises should be in writing. It is not pretended that there was any written consent.

It is further urged that the appellee, in view of the facts in evidence, is estopped from maintaining the action. We fully concur in the opinion expressed by the court below, that there are no elements of an estoppel in the case. The appellant was chargeable with notice of the terms of the lease to Tate, and knew, therefore, that her possession of the premises, as to the appellee, was unlawful. The appellee did not by any act, such as the receipt of rent for the occupancy of the premises after the transfer or the like, acknowledge the appellant as a tenant. The appellant made no improvements upon the faith of undisturbed possession, nor was any act done making it inequitable for appellee to pursue the remedy adopted to obtain possession. It does not

appear even that the proper officer of the appellee had notice that the appellant, instead of Tate, was occupying the premses, until about the time the suit was brought. Notice to an agent, with such restricted powers as Bush possessed, was not notice to the corporation.

It is also claimed that the evidence was insufficient, because there was no proof of a demand before the commencement of the action. The evidence does not show that the relation of landlord and tenant existed between the parties to this action. As we have held, in such case, no demand is necessary.

In our opinion, the court below committed no error in affirming the judgment of the special term.

The judgment is affirmed, with costs.