

**FILED**

Jun 09 2015, 9:53 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

R. Brian Woodward
David E. Woodward
Woodward & Blaskovich, LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Scott B. Cockrum
John R. Terpstra
Schererville, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

Merrillville 2548, Inc. successor
to Merrillville GC 2548, Inc.,

*Appellant/Intervenor/Counterclaim*

*Plaintiff,*

v.

BMO Harris Bank N.A. f/k/a
Harris N.A., as the assignee of
the Federal Deposit Insurance
Corporation as the receiver for
Amcore Bank, N.A.,

*Appellee/Plaintiff/Counterclaim*

*Defendant*

June 9, 2015

Court of Appeals Cause No.
45A03-1409-MF-345

Appeal from the Lake Superior Court

The Honorable Calvin D. Hawkins,
Judge

Cause No. 45D02-1301-MF-26

**Bradford, Judge.**

# Case Summary

In 2006, MCSS Merrillville, L.L.C. ("Borrower"), executed a promissory note ("the Note") and leasehold mortgage ("the Mortgage") as security for the note in favor of Amcore Bank, N.A.; the debt and mortgage were later assigned to Appellant-Plaintiff-Counterclaim Defendant BMO Harris Bank, N.A., ("BMO Harris"). Borrower had entered into a lease ("the Lease") for real property in Century Plaza in Merrillville ("the Parcel"), on which it operated a Golden Corral restaurant. The Lease required Borrower to refrain from assigning the Lease or subletting the Parcel. Since 2007, however, Appellee-Intervenor GC 2548, Inc. ("GC 2548"), has actually operated the Golden Corral, although it has never been made party to the Lease and there was no assignment of rights under the Lease from Borrower to GC 2548.

In 2013, BMO Harris sued Borrower and various guarantors of Borrower's debt for breach of contract, foreclosure, and appointment of a receiver. Eventually, BMO Harris moved for default judgment against Borrower and all but one of the guarantors and for an order of possession of the leasehold interest. In August of 2014, the trial court entered default judgment against Borrower and all but one of the guarantors and ruled that any right to possession by those parties was barred. At a hearing, GC 2548 argued that Borrower had abandoned the Parcel and that GC 2548 was an equitable assignee of the Lease. The trial court rejected this argument and ruled that: (1) BMO Harris's default judgment against Borrower entitled it to foreclose on its interest in the Parcel; (2) Article 9.1 of the Indiana Uniform Commercial Code ("UCC") dictated the

result of this case, rather than Indiana Code provisions governing mortgage foreclosure actions; and (3) GC 2548 was bound by the default judgment against the defendants and was given thirty days to vacate the Parcel.

[3]     On appeal, GC 2548 contends that (1) the trial court erred in concluding that Article 9.1 applied; (2) GC 2548 is an equitable assignee of Borrower's Lease; and (3) the equitable assignment of the Lease terminated BMO Harris's security interest; and (4) that, even if BMO Harris is entitled to foreclose the Mortgage, it is not entitled to immediate possession of the Parcel. BMO Harris counters that (1) GC 2548 waived certain arguments, (2) GC 2548 was bound by the default judgment against defendants, (3) Article 9.1 of the UCC applies, (4) GC 2548 is not entitled to equitable relief, and (5) the trial court correctly entered its order of possession in favor of BMO Harris. We conclude that although GC 2548 preserved its argument that it was equitably assigned the lease, it has failed to establish equitable assignment, the provisions of Article 9.1 of the UCC do not apply to leasehold mortgages, and BMO Harris is not entitled to an order of possession of the Parcel. We therefore affirm in part, reverse in part, and remand for further proceedings.

# Facts and Procedural History

[4]     At some point in 2005, Borrower entered into the Lease with Century Plaza, LLC ("Landlord"), for the Parcel, located in Century Plaza, with a term of fifteen years and on which Borrower was operating a Golden Corral restaurant. *Inter alia*, the Lease required Borrower to "refrain from assigning, selling, or in

any manner transferring this Lease or any interest therein, by operation of law or otherwise; to refrain from subletting this Leased Premises or any portion or portions thereof; to refrain from permitting the occupancy by anyone with, through or under it." Defendant's Ex. 2. P. 22. On September 22, 2006, Borrower executed the Note in the principal sum of $1,520,000.00, payable to Lender.[1] The Note required Borrower to make payments on the twentieth of each month until maturity on September 22, 2011, at which point Borrower was required to make a final principal and interest payment. The Note was secured by the Mortgage, originally dated June 2, 2006, and modified on September 22, 2006. In the Mortgage, Borrower granted Lender "a security interest in and all of [Borrower's] rights, titles, and interest in the Lease and [Borrower's] leasehold estate … located in Lake County at 8215 Broadway, Merrillville, Indiana, 46410." Appellant's App. pp. 129-30. The Mortgage was recorded with the Lake County Recorder on or about February 28, 2007. At some point, BMO Harris was assigned all of Lender's rights and obligations pursuant to the Note and the Mortgage.

[5] Since August of 2007, William Niemet has operated the Golden Corral Restaurant at 8215 Broadway on behalf of GC 2548. Borrower transferred the franchise agreement for the Golden Corral to GC 2548, and ever since, GC 2548 has operated pursuant to the terms of the Lease, making payments directly

---

[1] The Note was amended on September 21, 2007, in the amended amount of $1,501,918.50. (Appellant's App. 85).

to Landlord while also paying property taxes and improving the real estate. GC 2548, however, is not associated with Borrower, has never been made a party to the Lease, and has not been assigned any of Borrower's rights pursuant to the Lease. Moreover, GC 2548 has made no payments to BMO Harris on the Note.

[6] On January 23, 2013, BMO Harris filed a complaint for breach of contract, foreclosure of the Mortgage, and appointment of a receiver. BMO Harris named Borrower as principal defendant and also named, as guarantors of Borrower's debt, MCSS Illinois, L.L.C.; Kipling Homes, L.L.C.; Kipling Development Corporation; Edward Mattox; and Peter Cinquegrani. BMO Harris alleged that Borrower breached the terms of the Note by, *inter alia*, failing to repay the indebtedness and all other sums due on the maturity date of September 22, 2011. The complaint also sought to foreclose BMO Harris's interest in the Parcel. Of the defendants, only Cinquegrani appeared and answered the complaint.

[7] On April 18, 2013, the trial court granted BMO Harris's request for the appointment of a receiver. On May 29, 2013, GC 2548 moved to intervene, which motion the trial court granted on June 18, 2013. On June 20 and October 29, 2013, the receiver filed reports, neither of which was objected to by GC 2548. On December 20, 2013, the receiver filed a third report, to which GC 2548 objected on unspecified grounds.

On June 24, 2014, BMO Harris moved for entry of default, judgment, and order of possession of the Parcel. On July 11, 2014, GC 2548 filed a counter/third-party claim. On July 14, 2014, the trial court held a hearing on BMO Harris's motion for entry of default, judgment, and order of possession. On August 5, 2014, the trial court entered default judgment against all defendants except Cinquegrani and ruled that none of the defendants had any right of possession of the Parcel.

On August 20, 2014, the trial court held a contested hearing on the issue of possession of the Parcel, at which GC 2548 presented evidence concerning its claim that Borrower had abandoned the Parcel and that GC 2548 was an equitable assignee of the Lease. On September 19, 2014, the trial court issued its order on BMO Harris's motion for possession. The trial court's order provides as follows:

ORDER

This matter came before the Court on Plaintiff's Motion for Possession of Real Estate and heard on August 20, 2014. The Plaintiff, BMO HARRIS, N.A. f/k/a HARRIS N.A., as the Assignee of the Federal Deposit Insurance Corporation as the receiver for Amcore Bank, N.A. (hereinafter, "BMO HARRIS") appeared by counsel, JOHN R. TERPSTRA and SCOTT B. COCKRUM. The Intervening Defendant, [GC 2548], appeared in person by its corporate representative and by counsel, DAVID E. WOODWARD and R. BRIAN WOODWARD.

Cause submitted. Evidence heard.

The Court, after considering the evidence, hearing arguments of counsel, having taken this matter under advisement and being duly advised in the premises now submits its findings

of fact and conclusions of law pursuant to Trial Rule 52 A of the Indiana Rules of Civil Procedure.

ISSUES

The Plaintiff contends that Promissory Notes dated September 22, 2006 and September 21, 2007 were entered into between AMCORE BANK, N.A. to which BMO HARRIS is an assignee, as Lender and MCSS MERRILLVILLE, LLC (hereinafter "MCSS") as Borrower. The Plaintiff contends that the subsequent note amended the original. Moreover, the note was secured by a Leasehold Mortgage dated June 2, 2006 with a Modification of Leasehold Mortgage dated September 22, 2006. The Plaintiff further contends that the Leasehold Mortgage claimed a right to a leasehold interest held by, MCSS under Lease for Century Plaza Merrillville (hereinafter, the "LEASE") as described under a Memorandum of Lease dated June 15, 2006 and recorded with the Recorder of Lake County, Indiana. The Plaintiff further contends that the Leasehold Mortgage and Memorandum of Lease encompass a leasehold located at 8215 Broadway, Merrillville, Indiana, at which address is operated a Golden Corral restaurant. Before August, 2007, MCSS operated the Golden Corral restaurant; since August 2007, [GC 2548] has operated the Golden Corral restaurant.

The Intervening Defendant contends that [GC 2548] is not affiliated with MCSS. Furthermore, the Intervening Defendant contends that [GC 2548] executed no documents evidencing assignment of any rights or obligations under the Lease by MCSS or BMO HARRIS. The Intervening Defendant contends that it was not, and never has been, a named tenant or other party under the terms of the Lease. And the Intervening Defendant contends that it took on obligations under the Lease in payment of rents and maintained its Golden Corral restaurant through capital and repair expenditures. The issues are:

1.   Does the Order of Hearing of July 14, 2014, as amended foreclose BMO HARRIS' security interest with finality against the interest of [GC 2548]?

2.   Notwithstanding the fact that [GC 2548] took on the obligations of the Lease without having actually signed same

is said Intervening Defendant subject to the provisions related to its predecessor, MCSS?

FINDINGS OF FACTS

A preponderance of the evidence established the following facts:

1. The Lease, a real estate interest, is owned by the landlord, IP-TL Century Plaza, LLC.

2. BMO HARRIS is foreclosing upon a leasehold interest.

3. With the exception of the Intervening Defendant all other Defendants have been defaulted and that those Defendants have no existing right to possession or claim to the property at issue.

4. The Court appointed a Receiver on April 18, 2013; moreover, the Receiver demanded no rents nor initiated no lawsuits against the Intervening Defendant.

5. Since August, 2007 the Intervening Defendant has operated the Golden Coral restaurant in Merrillville, Indiana in accordance with and consistent with the Lease.

6. The Intervening Defendant is not affiliated with any of the defaulted Defendants.

7. The Intervening Defendant has not paid any payments to BMO Harris or its assignor at any time pursuant to the Leasehold Mortgage or note.

8. The Intervening Defendant is the sole entity which can currently operate a Golden Corral restaurant as a franchisee at the Merrillville location which is the subject of this lawsuit.

9. Since taking possession of the premises in August, 2007, the Intervening Defendant has made improvements on the property.

PRINCIPLES OF LAW

1. The Court shall further determine whether or not the default judgment of July 14, 2014 as amended binds the Intervening Defendant.

2. In determining whether a security holder of a leasehold has a possessory interest of real estate, courts examine whether a lessor is privy to said security agreement.

3. The Court shall determine BMO HARRIS' ability to remove the Intervening Defendant from real estate located at 8215 Broadway, Merrillville, Indiana pursuant to IC 34-30-10-4 et seq.[]

ANALYSIS

In the matter before the Court a default judgment of foreclosure on the Note and Leasehold Mortgage between BMO HARRIS, MCSS and other defendants except for Peter [Ci]nquegrani who agreed to a judgment of foreclosure being entered against him to the Order of Hearing of July 14, 2014, as amended. The aforesaid order forecloses BMO HARRIS' security with finality and entitles BMOHARRIS [sic] to immediately execute said foreclosure.

The real estate owner, IP-TL Century Plaza, LLC is not a party in the herein cause of action. The Leasehold Mortgage, however, spells out the relationship between IP-TL Century Plaza, LLC and BMO HARRIS. Consequently, IP-TL Century Plaza, LLC has protection of its rights regardless of whom the lessee might be given the Leasehold Mortgage.

The intervening Defendant argues that BMO HARRIS failed to set forth evidence of assignment of the Leasehold Mortgage and, thus, cannot sustain[] its judgment of foreclosure. Indiana Courts have held "the assignment is not the foundation of the action in (foreclosure cases), and that it is not necessary to set out a copy of such assignment". **Stanford v. Broadway Savings & Loan Company**, 24 N.E. 154, 155 (Ind. 1890). Since the Intervening Defendant was not a party to the contract between BMO HARRIS and MCSS, not in privity with BMO HARRIS or MCSS, and not an intended third party beneficiary of the Leasehold Mortgage it lacks standing to assert contract defen[ses]. **Harold McComb & Son, Inc. v. JP Morgan Chase Bank, NA**, 892 N.E. 2d 1255 (Ind. Ct. App. 2008). **Williams v. Eggleston**, 170 US 304 (1898).

The statutory argument that the Intervening Defendant postulate[s] has no basis herein due to the fact that BMO HARRIS is probably seeking its remedy under IC 32-30-10, et seq.[] Moreover, the Leasehold Mortgage is a security interest

flowing with the negotiable instrument and attaching to the collateral under I.C. 26-1-9.1-203 the transaction is govern by Article 3 and enforceable under Article 9[.1] of the Uniform Commercial Code. BMO HARRIS is entitled to take possession of the collateral given the fact that the Intervening Defendant has not made a requisite payment to the Receiver notwithstanding that said Receiver has not made any demands of same on said Intervening Defendant. The Leasehold Mortgage in essence binds the Intervening Defendant given the fact that there was a default judgment on the critical parties in the herein proceedings.

CONCLUSIONS OF LAW

1. The default judgment of July 14, 2014, as amended binds the Intervening Defendant.

2. The lessor, IP-TL Century Plaza, LLC, is privy to the herein Leasehold Mortgage.

3. BMO HARRIS has standing to remove the Intervening Defendant from the real estate located at 8215 Broadway, Merrillville, Indiana pursuant to IC 34-30-10-4.

ORDER

The Court orders as follows:

(a.) The Motion for Possession of BMO HARRIS is granted.

(b.) The Intervening Defendant is ordered to vacate any right or obligation it holds to the leasehold at 8215 Broadway, Merrillville, Indiana within (30) thirty days from the date of the herein order.

(c.) In the event the Intervening Defendant fails to vacate the leasehold, the Sheriff of Lake County shall enter upon said interest and eject the Intervening Defendant or any other person or party, who, since the commencement of this action, may have come into possession of the herein leasehold interest and put BMO HARRIS in full, peaceful and quiet possession of the leasehold interest without delay.

(d.) This matter is hereby certified for interlocutory appeal.

ALL OF WHICH IS ORDERED this 19th day of September, 2014.

Appellant's App. pp. 26-30.

[10]   GC 2548 contends that (1) the trial court erred in concluding that Article 9.1
applied; (2) GC 2548 is an equitable assignee of Borrower's Lease; (3) the
equitable assignment of the Lease terminated BMO Harris's security interest;
and (4) that even if BMO Harris's security interest is still valid, BMO Harris is
not entitled to immediate possession of the Parcel.  BMO Harris counters that
(1) GC 2548 waived certain arguments, (2) GC 2548 was bound by the default
judgment against defendants, (3) Article 9.1 of the UCC applies, (4) GC 2548 is
not entitled to equitable relief, and (5) the trial court correctly entered its order
of possession in favor of BMO Harris.

# Discussion and Decision

[11]   Where, as here, the trial court has issued written findings and conclusions, our
standard of review is well-settled:

> First, we determine whether the evidence supports the findings
> and second, whether the findings support the judgment.  In
> deference to the trial court's proximity to the issues, we disturb
> the judgment only where there is no evidence supporting the
> findings or the findings fail to support the judgment.  We do not
> reweigh the evidence, but consider only the evidence favorable to
> the trial court's judgment.  Challengers must establish that the
> trial court's findings are clearly erroneous.  Findings are clearly
> erroneous when a review of the record leaves us firmly convinced
> a mistake has been made.  However, while we defer substantially
> to findings of fact, we do not do so to conclusions of law.
> Additionally, a judgment is clearly erroneous under Indiana Trial

Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Balicki v. Balicki*, 837 N.E.2d 532, 535-36 (Ind. Ct. App. 2005) (citing *Carmichael v. Siegel*, 754 N.E.2d 619, 625 (Ind. Ct. App. 2001)), *trans. denied*.

## I. Whether GC 2548 has Waived Certain Arguments

[12] BMO Harris argues that GC 2548 has waived certain arguments for appellate review. Specifically, BMO Harris contends that GC 2548 failed to make any argument in the trial court regarding the equitable assignment of Borrower's Lease and may not now raise it for the first time on appeal.

> As a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *Pitman v. Pitman*, 717 N.E.2d 627, 633 (Ind. Ct. App. 1999). This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by the parties. *See Whiteco Indus., Inc. v. Nickolick*, 549 N.E.2d 396, 398 (Ind. Ct. App. 1990). Appellate courts, on the other hand, have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision. *Id.* The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. Conversely, an intermediate court of appeals, for the most part, is not the forum for the initial decisions in a case. Consequently, an argument or issue not presented to the trial court is generally waived for appellate review. *Id.*

*GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC.*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002).

[13]     BMO Harris points to the fact that GC 2548 did not specifically argue equitable assignment at the default judgment or possession hearings on July 14 and August 20, 2014, respectively. While essentially conceding that this is true, GC 2548 contends that the equitable assignment issue was adequately before the trial court because it was raised in its counter/third-party claim, filed on July 11, 2014. In support of its position, GC 2548 includes passages from the counter/third-party claim in its reply brief. This, along with the fact that GC 2548 presented evidence at the August 20, 2014, hearing relating to the issue, is adequate to preserve the issue for appellate review.

[14]     While there does not seem to be any reason to doubt the accuracy of the quoted passages from the counter/third-party claim, and BMO Harris does not contest their authenticity or accuracy, the fact is that GC 2548's counter/third-party claim does not appear in the record on appeal: it was not included in BMO Harris's Appellant's Appendix and GC 2548 did not file an appendix. As a general rule, this court may not consider material that is not properly part of the record on appeal. *See King v. State*, 877 N.E.2d 518, 522 n.2 (Ind. Ct. App. 2007) ("[W]e may not and should not consider material that is not part of the record.").

[15]     Under the circumstances of this case, however, we conclude that application of waiver would be inappropriate. First, in our view it was BMO Harris's

responsibility to point out that GC 2548's counter/third-party claim was not part of the record on appeal, and it did not. BMO Harris could have filed a motion to strike that portion of GC 2548's reply brief but did not. Second, it seems a near certainty that the result of a motion to strike portions of GC 2548's reply brief would have been a request to file a belated appendix, a request that likely would have been granted in the interest of deciding issues on the merits. Third, GC 2548 did, in fact, present evidence related to the equitable assignment issue at the hearing on August 20, 2014. We conclude that application of the waiver rule would be inappropriate in this case, allowing this court to reach the merits of all of GC 2548's arguments.

## II. Whether the Trial Court Erred in Concluding that GC 2548 was not Equitably Assigned the Lease

[16] GC 2548 argues that despite never having been made a party to the Lease, it was nonetheless equitably assigned the Lease by Borrower and that the trial court erroneously failed to so conclude. GC 2548 follows this argument by claiming that the alleged equitable assignment of the Lease extinguished BMO Harris's security interest. It is worth noting that GC 2548 is appealing from a negative judgment on this claim, making its task difficult on appeal:

> A judgment entered against a party who bore the burden of proof at trial is a negative judgment. *Garling v. Ind. Dep't of Natural Res.*, 766 N.E.2d 409, 411 (Ind. Ct. App. 2002). On appeal, we will not reverse a negative judgment unless it is contrary to law. *Mominee v. King*, 629 N.E.2d 1280, 1282 (Ind. Ct. App. 1994). To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together

with all the reasonable inferences to be drawn therefrom. *J.W. v. Hendricks Cnty. Office of Family & Children*, 697 N.E.2d 480, 482 (Ind. Ct. App. 1998). A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court. *Mominee*, 629 N.E.2d at 1282.

*Smith v. Dermatology Associates of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012).

[17] Although the trial court did not issue any conclusions of law regarding GC 2548's equitable assignment claim, GC 2548 contends that certain uncontested findings of fact necessarily support such a conclusion. BMO Harris argues that the cases regarding the equitable assignment of leases relied upon by GC 2548 are distinguishable and that the facts and evidence do not otherwise support an equitable assignment. We agree with BMO Harris that the trial court's conclusion on this point is not contrary to law.

[18] GC 2548 relies on the Indiana Supreme Court's decision in *Indianapolis Manufacturing and Carpenters Union v. Cleveland, C., C., and I. Railway Company*, 45 Ind. 281 (1873), and our decision in *Collins v. McKinney*, 871 N.E.2d 363 (Ind. Ct. App. 2007). In *Indianapolis Manufacturing and Carpenters Union*, the Cleveland, C., C., and I. ("Lessor") leased a parcel to a man named Tate ("Lessee"), who operated a lumber yard thereon, with the proviso that he could not assign or sublet any portion of the premises without Lessor's written consent. *Indpls. Mfg. and Carpenters Union*, 45 Ind. at 285. Lessee occupied the parcel until he sold his business to the Indianapolis Manufacturing and

Carpenters Union ("the Union"), at which point Lessee notified Lessor's agent of the sale, continued to pay his rent to Lessor pursuant to the lease, and received an equal amount from the Union each month. *Id*. at 285-86. As it happens, Lessor objected to the Union's occupation of the parcel and sued to recover possession soon after learning of it. *Id*. at 290. The Indiana Supreme Court ruled that even in the absence of a written assignment, the arrangement between Lessee and the Union amounted to an equitable assignment, something the lease did not allow. *Id*. Consequently, the Indiana Supreme Court affirmed the trial court's ruling that Lessor was entitled to recover possession of the property in question. *Id*.

[19] In *Collins*, McKinney leased two parcels of land from Collins, which it promptly assigned (with Collins's consent) to Tomkinson Chrysler Jeep, Inc. *Collins*, 871 N.E.2d at 367. As in *Indianapolis Manufacturing and Carpenters Union*, the lease contained a no-assignment/sublet-without-consent provision. *Id*. at 366. Tompkinson subsequently sold its Chrysler Jeep dealership to Glenbrook Dodge, Inc., without Collins's consent. *Id*. at 367. The trial court granted McKinney's motion for directed verdict, concluding that Collins had produced insufficient evidence of a breach of contract. *Id*. at 369. We reversed on this point, reasoning as follows:

> Here, Collins presented sufficient evidence to support a jury finding that the arrangement between Tomkinson and Glenbrook constituted an equitable assignment as discussed in Indianapolis Manufacturing. First, the evidence as to whether there was ever actually a management agreement between Tomkinson and

Glenbrook is in conflict. At one point, Doug McKibben, the owner of Glenbrook, testified, "We had a Management Agreement." Tr. p. 123. However, he then testified that the "only" agreement between Tomkinson and Glenbrook was the Asset Purchase Agreement. *Id*. at 123-24. Furthermore, there is evidence that Glenbrook assumed Tomkinson's lease obligations for Parcel 1 in August 2004, took possession of Parcel 1, and began paying rent directly to McKinney for the parcel. Finally, there is evidence that Glenbrook began selling a different brand of cars than McKinney after taking possession of Parcel 1, suggesting that Glenbrook was in primary control. The jury could have reasonably found that the arrangement between Tomkinson and Glenbrook constituted an assignment of the Sublease.

*Id*. at 373.

[20] Keeping in mind that we are evaluating a claim rooted in equity, we conclude that the authority relied upon by GC 2548 does not help its cause. "[T]he very first maxim with which we meet in equity is that it will regard that as done which in good conscience ought to be done."[2] *Sourwine v. Supreme Lodge Knights of Pythias of the World*, 12 Ind. App. 447, 452, 40 N.E. 646, 647 (1895) (citation omitted). In both *Indianapolis Manufacturing and Carpenters Union* and *Collins*, the doctrine of equitable assignment was enlisted to aid landlords whose tenants had effectively–and impermissibly–assigned their leases while hoping to avoid the consequences because the assignment was not "official." The facts of this case are quite different. Essentially, GC 2548 is seeking to employ the doctrine

---

[2] The version of this passage found in the *www.westlaw.com* database differs from the version found in the Indiana Appellate Court Reports by adding commas after "which" and "conscience."

of equitable assignment so that it may assume Borrower's beneficial rights without being burdened by Borrower's most onerous obligation, *i.e.*, the Note with its associated security interest. Put simply, the equities of this case do not favor GC 2548.

[21] Even beyond the purely equitable concerns, this case is also distinguishable from *Indianapolis Manufacturers and Carpenters Union* and *Collins* on the facts more specifically relating to the alleged assignment. GC 2548 points to some of the trial court's findings to support its argument that the trial court was essentially compelled to conclude that an equitable assignment of the Lease occurred, namely, findings that GC 2548 had operated the Golden Corral since 2007 and that it made improvements to the Parcel. These findings do not necessarily support a conclusion that CG 2548 had completely taken over the Parcel, especially when one considers that there is no evidence that GC 2548 ever made a single payment on the Note. GC 2548 also points to evidence in the record that it purchased the franchise rights for the restaurant from Borrower, that it dealt directly with Landlord, that BMO Harris was aware as far back as 2007 that it was in possession of the Parcel, and that all concerned were aware that it GC 2548 was not affiliated with Borrower. The trial court, however, made no findings regarding this evidence and was not required to credit it. Finally, there does not seem to be any evidence that Landlord had any issue with GC 2548's occupancy of the Parcel, despite the fact that the Lease included the standard non-assignment/sublet language. In other words, it may be inferred that the Landlord seems to have viewed GC 2548's occupancy of the

Parcel as something like a management agreement. When viewed in light of the stringent standard of review employed when a party appeals from a negative judgment, the findings and other evidence in the record do not point unerringly to a conclusion different from the trial court's. The trial court's conclusion in this regard is not clearly erroneous.[3]

## III. Whether The Trial Court Erred in Concluding that Article 9.1 of the Indiana UCC Applies to Leasehold Mortgages

[22] GC 2548 argues that the trial court erred in applying Article 9.1 of the Indiana UCC, which governs secured transactions, because the interest at issue in this case is a leasehold, allegedly an interest in real property. BMO Harris argues that the trial court properly ruled that Article 9.1 (codified at Indiana Code chapter 26-1-9.1) applies in this case, arguing that GC 2548 has failed to establish that a leasehold mortgage is an interest in or lien against real property. This question is key because if the provisions of the Indiana Code governing "normal" real estate mortgage foreclosures apply, BMO Harris's remedy in the event of foreclosure would be a sheriff's sale of Borrower's interest in the Parcel. On the other hand, if the provisions of the UCC apply, BMO Harris would have the ability to immediately take possession of the Parcel.

---

[3] Because we affirm the trial court's conclusion that there was no equitable assignment of the Lease, we need not address GC 2548's argument that the equitable assignment extinguished BMO Harris's security interest.

[23] We agree with GC 2548. Broadly, under the provisions of the UCC dealing with security interests in personal property, "[e]xcept as otherwise provided in subsections (c) and (d), IC 26-1-9.1 applies to … a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract[.]" Ind. Code § 26-1-9.1-109(a). This provision does not include leaseholds on real property, and we have little hesitation in concluding that leaseholds on real property are neither personal property nor fixtures. Additionally, subsection (d) of the same statute specifically provides that, *inter alia*, "IC 26-1-9.1 does not apply to … the creation or transfer of an interest in or lien on real property, *including a lease or rents thereunder*[.]" Ind. Code § 26-1-9.1-109(d) (emphasis added). The plain language of the Indiana UCC indicates that its provisions do not apply to leasehold mortgages.

[24] Our resolution of this issue is consistent with the weight of authority nationwide, which holds that a leasehold mortgage is a security interest in real estate and that law pertaining to security interests in personal property does not apply to them. *See, e.g.*, *In re Bristol Associates, Inc.*, 505 F.2d 1056, 1061 (3d Cir. 1974) ("Our conclusion, that lenders need not conform to the requirements of Article 9 in order to retain their security interest in a real estate lease assigned to them as collateral, is supported, apparently unanimously, by authorities who have considered this problem.").; *In re Le Sueur's Fiesta Store, Inc.*, 40 B.R. 160, 162 (Bankr. D. Ariz. 1984) ("Accordingly, as an 'instrument affecting real property' a security interest in an Arizona lease is valid against the Trustee or

subsequent purchasers or creditors without notice only if recorded in the County Recorder's office rather than with the Secretary of State.'").

[25] In summary, GC 2548 is correct that a leasehold mortgage foreclosure is governed by Indiana statutory law regarding real estate mortgages, and that the same foreclosure procedures need to be used. Therefore, Indiana Code chapter 32-30-10, which details the process of mortgage foreclosure, applies.

## IV. Whether the Trial Court Erred in Concluding that BMO Harris is Entitled to Immediate Possession of the Parcel

[26] Finally, GC 2548 argues that nothing in either Indiana Code chapter 32-30-10 or the Mortgage allows BMO Harris to take immediate possession of the Parcel. BMO Harris responds to this contention by arguing that GC 2548 must present a defense in order to defeat BMO Harris's claim of immediate possession, a defense that GC 2548 lacks the standing to assert. We agree with GC 2548 that BMO Harris has no right to immediate possession of the Parcel. GC 2548 is correct that Indiana Code chapter 32-30-10 contains no provisions for repossession by a mortgagee prior to a sheriff's sale. The Mortgage is likewise silent on the topic. As this court has explained,

> In most of our states, however, the lien theory of a mortgage prevails and a mortgagee acquires nothing more than a lien upon the property mortgaged. The mortgagor retains legal title and foreclosure is necessary to transfer the same to the mortgagee, who must purchase the property at decretal sale if he wishes to acquire such title. See Wiltsie on Mortgage Foreclosures, Fifth

Edition, Vol. 1, p. 10. Indiana is unequivocally committed to the lien theory and the mortgagee has no title to the land mortgaged. The right to possession, use and enjoyment of the mortgaged property, as well as title, remains in the mortgagor, unless otherwise specifically provided, and the mortgage is a mere security for the debt. *Baldwin v. Moroney* (1910), 173 Ind. 574, 91 N.E. 3; *Aetna Life Ins. Co. v. Broeker* (1906), 166 Ind. 576, 77 N.E. 1092; *State ex rel. v. Smith* (1902), 158 Ind. 543, 63 N.E. 25, 214, 64 N.E. 18, 63 L.R.A. 116; *Lowe v. Turpie* (1897), 147 Ind. 652, 44 N.E. 25, 47 N.E. 150, 37 L.R.A. 233; *United States Saving Fund and Investment Co. v. Harris* (1895), 142 Ind. 226, 40 N.E. 1072, 41 N.E. 451; *Morton v. Noble* (1864), 22 Ind. 160; *Fletcher v. Holmes* (1870), 32 Ind. 497; *Grable v. McCulloh* (1867), 27 Ind. 472.[4]

*Oldham v. Noble*, 117 Ind. App. 68, 75-76, 66 N.E.2d 614, 617 (1946).

[27] To summarize, the default situation in Indiana is that a mortgagee has a lien on, but no right to possession of, the mortgaged premises, and the facts of this case fit the default pattern. Because BMO Harris has no right to immediate possession of the Parcel, GC 2548 need not present a defense. Whatever rights BMO Harris may have to possess the Parcel will have to be purchased at the sheriff's sale conducted pursuant to Indiana Code sections 32-30-10-5, -8, and -

---

4 This string citation, as it appears in the Indiana Appellate Reports, differs in several respects from the citation found on the *www.westlaw.com* database and the printed Northeast Reporter volume. Rather than list the differences, the most obvious of which is the lack of italics, here is the West version for comparison:

Baldwin v. Moroney, 1910, 173 Ind. 574, 91 N.E. 3, 30 L.R.A., N.S., 761; Aetna Life Ins. Co. v. Broeker, 1906, 166 Ind. 576, 77 N.E. 1092; State ex rel. Lewis v. Smith, 1902, 158 Ind. 543, 63 N.E. 25, 214, 64 N.E. 18, 63 L.R.A. 116; Lowe v. Turpie, 1897, 147 Ind. 652, 44 N.E. 25, 47 N.E. 150, 37 L.R.A. 233; United States Saving Fund & Investment Co. v. Harris, 1895, 142 Ind. 226, 40 N.E. 1072, 41 N.E. 451; Morton v. Noble, 1864, 22 Ind. 160; Fletcher v. Holmes, 1870, 32 Ind. 497; Grable and Others v. McCulloh, 1867, 27 Ind. 472.

9. We reverse the trial court's order giving immediate possession to BMO Harris.

# Conclusion

[28] We conclude that GC 2548 preserved its equitable assignment claim for appellate review, although it has failed to establish that the trial court erred in finding that equitable assignment of the Lease did not occur. We further conclude that the trial court erred in concluding that the provisions of Article 9.1 of the UCC applied to the leasehold mortgage in this case. Finally, because we have concluded that real estate mortgage procedures must be used, we further conclude that BMO Harris has no right to immediate possession of the Parcel. Consequently, we remand for a sheriff's sale pursuant to the Indiana Code chapter 32-30-10.

[29] The judgment of the trial court is affirmed in part and reversed in part, and we remand with instructions.

Kirsch, J., concurs.

Vaidik, C.J., concurs in part and dissents in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Merrillville 2548, Inc. successor to Merrillville GC 2548, Inc., | Court of Appeals Case No. 45A03-1409-MF-345 |
| *Appellant/Intervenor/Counterclaim* | |
| *Plaintiff,* | |
| v. | |
| BMO Harris Bank N.A. f/k/a Harris N.A., as the assignee of the Federal Deposit Insurance Corporation as the receiver for Amcore Bank, N.A., | |
| *Appellee/Plaintiff/Counterclaim* | |
| *Defendant,* | |

**VAIDIK, Chief Judge, concurring in part, dissenting in part.**

[30] I concur in full with the majority's treatment of the waiver, equitable assignment, and UCC issues in this case. I respectfully dissent with respect to the final issue—whether BMO Harris is entitled to possession of the Parcel.

[31] The majority concludes that BMO Harris must purchase its right of possession at a sheriff's sale because "the default situation in Indiana is that a mortgagee

has a lien on, but no right to possession of, the mortgaged premises, and the facts of this case fit the default pattern." Slip op. at 22. I agree with this statement of the law. But here, GC 2548 is, at best, a month-to-month tenant, *not* a lessee or mortgagor. *See* Ind. Code § 32-31-1-2. As such, GC 2548 lacks any interest in the Parcel that certain mortgage-foreclosure procedures— particularly sheriff sales—are designed to protect.[5] *See* Ind. Code § 32-30-10-14 ("In all cases in which the proceeds of sale exceed the amounts described . . . the surplus must be paid to . . . the mortgage debtor, mortgage debtor's heirs, or other persons assigned by the mortgage debtor."). As a month-to-month tenant, GC 2548's interest in the property was thirty days' possession, and had there been no mortgage-foreclosure action, GC 2548 would have been entitled to thirty days' notice before eviction, nothing more. *See* Ind. Code § 32-31-1-1.

[32] By ordering a sheriff's sale, I believe the majority confers greater protection upon GC 2548 than it deserves, given that it is merely a month-to-month tenant with no interest in the Parcel. I would affirm the trial court's order giving BMO Harris the right to take possession of the Parcel in thirty days' time.

---

[5] The only party with interest in the Parcel was Borrower, but Borrower abandoned that interest when it agreed to foreclosure by default.