## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 05 2016, 8:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

W. Edward Skees
New Albany, Indiana

ATTORNEYS FOR APPELLEE

J. David Agnew
Gregory M. Reger
Lorch Naville Ward LLC
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Timothy French,

*Appellant-Defendant,*

v.

Stephen R. Elkin and Vanessa G. Elkin,

*Appellees-Plaintiffs,*

And

Greg Harmon and 21st Century Floor Covering, LLC,

*Appellees-Defendants.*

October 5, 2016

Court of Appeals Case No. 22A05-1601-PL-213

Appeal from the Floyd Superior Court

The Honorable Susan L. Orth, Special Judge

Trial Court Cause No. 22D01-1212-PL-1947

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, Timothy J. French (French), appeals the trial court's Order, enforcing a Mediation Settlement Agreement entered into with Appellees-Plaintiffs, Stephen R. Elkin (Elkin) and Vanessa G. Elkin (collectively, the Elkins).

[2] We affirm.

## ISSUE

[3] French raises five issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred in granting the Elkins' motion to enforce a mediated settlement agreement.

## FACTS AND PROCEDURAL HISTORY

[4] In 2008, Elkin and Greg Harmon (Harmon) were business partners. On February 11, 2008, they filed Articles of Organization to form the limited liability company of Elkin & Harmon LLC. Then, on June 2, 2008, Elkin and Harmon filed Articles of Organization to establish 21st Century Floor Covering, LLC (the Company). The Company operated in Floyd County, Indiana.

[5] On August 16, 2010, the Company received a $100,000 loan from Stock Yards Bank & Trust Company (Stock Yards Bank), which was guaranteed by the United States Small Business Administration (SBA). The Elkins and Harmon also personally guaranteed the SBA Loan. Specifically, the SBA Loan was secured, in part, by the Elkins' personal residence.

[6] On May 20, 2011, Elkin, Harmon, French, and the Company executed a Limited Liability Company Interest Sale and Assignment Agreement (Purchase Agreement). Pursuant to the Purchase Agreement, French "purchase[d] from Elkin, all of Elkin's right, title and interest in" the Company. (Appellant's App. p. 50). In addition to paying $20,000 for Elkin's share of the Company, French agreed "that he shall assume and cause to be assumed all of those Liabilities set forth in **Schedule C** [of the Purchase Agreement], and have Elkin released from liability therefore." (Appellant's App. p. 50). Although there is no "Schedule C" document attached to the Purchase Agreement, there is a document entitled "Schedule of Guarantees and Personal Liability to be Rescinded" located between Exhibits B and D. (Appellant's App. p. 72). This Schedule of Guarantees identifies, in relevant part, a balance on the Company's SBA Loan of $93,448.07.[1] Following the execution of the Purchase Agreement, Harmon and French each owned a 50% interest in the Company.

[7] In accordance with the terms of the Purchase Agreement, French took steps to refinance the SBA Loan. Stock Yards Bank submitted a request to the SBA, seeking to "replace [the Elkins'] guaranty with that of [French]." (Appellant's App. p. 143). In July of 2011, the SBA issued a recommendation to "allow request for the buyout of [Elkin] and [the] release of personal residence, and add new guaranty of [French] and his property. However since the loan is not

---

[1] We note that these provisions are contained in the copy of the Purchase Agreement that is attached to the Elkins' Motion to Enforce Settlement filed on April 15, 2015. As will be discussed below, a different Purchase Agreement is attached to the Elkins' Complaint.

seasoned[,] recommend decline request to release guaranty of [the Elkins] at this time." (Appellant's App. p. 143). On September 6, 2011, Stock Yards Bank amended the SBA Loan agreement to reflect that French "has assumed all personal liability of [the Elkins] under [the SBA Loan]." (Appellant's App. p. 93). According to Elkin, when he met with Harmon and French at Stock Yards Bank for the closing of the SBA Loan refinance, Stock Yards Bank informed the parties "that [Elkin's] name was [going to] be left on there, but [his] house was [going to] be taken off." (Tr. p. 15). Thereafter, Elkin took no further action with respect to the SBA Loan or his release therefrom because, as he stated, he believed that he "would be all right because [Harmon and French were going to] pay the loan back. It wasn't that much and their houses were connected to it. And so I never gave it . . . another thought. . . . I didn't think that they weren't [going to] pay it." (Tr. p. 42).

[8] On December 13, 2012, the Elkins filed a Complaint, alleging that Harmon, French, and the Company breached the Purchase Agreement by "fail[ing] to make regular and consistent payments on the obligations [of the Purchase Agreement], and as a result the debt fell delinquent." (Appellant's App. p. 13). According to the Elkins, they had become "personally liable to creditors for debts assumed by [Harmon, French, and the Company]." (Appellant's App. p. 13). Nearly two years after the lawsuit was filed, on August 13, 2014, the parties executed a Mediation Settlement Agreement. Pursuant to the Mediation Settlement Agreement, Harmon, French, and the Company

agree[d] to pay [the Elkins] the total sum of $11,000.00, as full and final settlement of all claims that [the Elkins] have, had or may have as a result of the [P]urchase [A]greement entered into with [Harmon, French, and the Company] on or about May 20, 2011, and all claims that were or could have been asserted in the subsequent cause of action filed by [the Elkins].

(Appellant's App. p. 47). The Mediation Settlement Agreement also stipulates that "[a]s further consideration for this [Mediation Settlement] Agreement, Harmon and French warrant that *all liabilities listed on 'Schedule C' to [the] [P]urchase [A]greement have been satisfied, paid in full, and/or refinanced to release any personal guarantees by or on behalf of the Elkins*." (Appellant's App. p. 47) (emphasis added).

[9]     Prior to the Mediation Settlement Agreement—*i.e.*, as early as March 16, 2014, the Company became delinquent in its repayment of the SBA Loan; however, it does not appear that this delinquency was brought to the attention of the Elkins prior to the execution of the Mediation Settlement Agreement. At some point, the SBA pursued repayment of the SBA's Loan from French as a guarantor. In September of 2014, French negotiated with the SBA for the "release of his personal guaranty and the SBA's . . . lien on his residence" in exchange for a cash payment of $11,750. (Appellant's App. p. 126).

[10]    Two months after French settled with the SBA and secured the release of his personal guaranty, on December 28, 2014, Elkin received a notice from the SBA that the Company's SBA Loan was delinquent. The notice stated that Elkin was required to remit $59,678.86 in order to avoid being referred to the

U.S. Department of the Treasury for collection. On March 4, 2015, Elkin received a notice from the Department of the Treasury, which indicated that the balance on the SBA Loan was $60,548.70. The Department of the Treasury informed Elkin that "[c]ollection action will continue unless you make payment, within ten (10) days . . . , in the amount of $77,502.34, which includes all applicable fees, interest, and penalties." (Appellant's App. p. 86).

[11] On April 15, 2015, the Elkins filed a Motion to Enforce Settlement, claiming that, contrary to the warranty in the Mediation Settlement Agreement, the SBA Loan "obligation apparently [has] not been released, satisfied or paid in full as the Elkins are now receiving (since the mediation) letters from the [SBA] demanding immediate payment of the obligation." (Appellant's App. p. 46). On May 6, 2015, French filed a response, arguing that he had "satisfied his obligations under the [Mediation Settlement Agreement]" by substituting his personal guaranty for that of the Elkins on the SBA Loan. (Appellant's App. p. 88). On May 21, 2015, the trial court conducted a hearing on the Elkins' motion.[2] Following the hearing but prior to the trial court's ruling, on May 27, 2015, the Department of the Treasury sent Elkin a notice of intent to garnish his wages if he did not pay $77,019.72 or establish a payment plan prior to June 26, 2015. Thus, on June 3, 2015, the Elkins filed a Supplemental Motion to

---

[2] Harmon was not at this hearing, nor was he represented by counsel. In fact, it appears that, following the Mediation Settlement Agreement, Harmon has not acknowledged or participated in any court proceedings relating to this matter. Although he is listed as an Appellee-Defendant in this case, Harmon has not filed a brief.

Enforce Settlement and Request for Damages and Sanctions, arguing that the notice of intended garnishment should serve "as further evidence of the breach of the Mediation [Settlement] Agreement on the part of Harmon and French." (Appellant's App. p. 101).

[12] On June 12, 2015, the trial court issued an order, granting the Elkins' Motion to Enforce Settlement. The trial court determined that Harmon and French had breached the Mediation Settlement Agreement because they had warranted that the SBA Loan was either "satisfied, paid in full, and/or refinanced to release any personal guarantees by or on behalf of the Elkins." (Appellant's App. p. 108). Because the SBA had intercepted the Elkins' tax refund in the amount of $1,344, the court ordered Harmon and French to pay the Elkins the same sum. The court also ordered Harmon and French to comply with the terms of the Mediation Settlement Agreement within sixty days.

[13] Instead of making a payment to the Elkins, on June 22, 2015, French filed a Motion to Avoid Settlement Agreement. He argued that the Mediation Settlement Agreement should be dissolved based on mutual mistake because "Elkin failed to obtain a release [from the SBA] and did not disclose this fact to French." (Appellant's App. p. 112). On July 1, 2015, the Elkins filed their Third Motion to Enforce Settlement along with a Request for Sanctions. On July 9, 2015, the trial court summarily denied French's Motion to Avoid Settlement Agreement.

[14] Still, neither French nor Harmon complied with the trial court's orders, so on September 28, 2015, the Elkins filed a Motion for Rule to Show Cause and requested a hearing. On October 27, 2015, French filed a Motion for Relief from Order, again arguing that the Mediation Settlement Agreement should be set aside because he agreed to it only "after being falsely convinced that [the Elkins] were released of all liability under their personal guarant[y] agreements with the SBA." (Appellant's App. p. 136). On November 24, 2015, the trial court conducted a hearing. During the hearing, Elkin testified that neither Harmon nor French had paid the $1,344 ordered by the court on June 12, 2015. Furthermore, Elkin explained that, in order to avoid having his credit score tarnished by non-payment, he negotiated with the SBA and settled the $77,019.72 delinquency by paying $16,750.

[15] On December 31, 2015, the trial court issued its Order. The trial court denied French's Motion for Relief from Order and "again order[ed] that the settlement be enforced as it has done on two prior occasions." (Appellant's App. p. 158). Specifically, the trial court ordered that French and Harmon "must immediately pay the sum of $1,344.00 to the Elkins and that . . . Harmon and . . . French must also pay the amount of $16,750.00 to the Elkins within [thirty] days as a means of enforcing the agreement and by virtue of their failure to follow the Order of June 12, 2015." (Appellant's App. p. 159). Finally, the trial court ordered Harmon and French to "pay $2,100 in attorney fees associated with the enforcement of the Mediation [Settlement] Agreement and

by virtue of their failure to follow the [c]ourt's Order of June 12, 2015 within [thirty] days." (Appellant's App. pp. 159-60).

French now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Verified Motion to Strike*

We first address French's Verified Motion to Strike, which he filed with this court on July 11, 2016. On July 15, 2016, our motions panel held French's motion in abeyance to be decided by the writing panel. Indiana Appellate Rule 42 provides that we "may order stricken from any document any redundant, immaterial, impertinent, scandalous or other inappropriate matter."

In his Motion to Strike, French accuses the Elkins of furtively altering the terms of the Purchase Agreement. French further asserts that the Elkins, in their appellate brief, "attempt to cover-up [*sic*] their introduction of [the altered Purchase Agreement] by falsely claiming it was an attachment to the Mediation Settlement Agreement" when, in fact, "[t]ere were no exhibits or documents attached to the Mediation Settlement Agreement at the time of execution." (Motion to Strike pp. 2, 5). Instead, the Mediation Settlement Agreement simply makes a reference to "'Schedule C' to said [P]urchase [A]greement." (Appellant's App. p. 47). Therefore, pursuant to Appellate Rule 42, French moves "to strike from [the Elkins'] Brief all statements and references asserting [there] were exhibits or documents attached to the Mediation Settlement Agreement" because these statements "are completely false and, as a result,

impertinent and inappropriate." (Motion to Strike pp. 3-4). In particular, French requests that we strike nine separate statements from the Elkins' brief which, in some form, suggest that "'Schedule C' was attached as an exhibit" to the Mediation Settlement Agreement. (Motion to Strike p. 3).

[19] While we agree with French that the Mediation Settlement Agreement does not, itself, include any exhibits or attachments, it does specifically refer to Schedule C of the Purchase Agreement. Moreover, attached to the Elkins' Motion to Enforce Settlement, which is the basis for the present appeal, are multiple exhibits, including the Mediation Settlement Agreement and a copy of the Purchase Agreement (and thus Schedule C). As such, we do not find that the Elkins' references to Schedule C as an attachment to the Mediation Settlement Agreement amount to a "cover-up" of an altered Purchase Agreement. (Motion to Strike p. 2). Furthermore, because we are able to distinguish between the documents attached to the Motion to Enforce Settlement and the Mediation Settlement Agreement itself, we decline to strike the requested statements.

## II. *Enforcement of Mediation Settlement Agreement*

[20] French claims that the trial court erroneously enforced the Mediation Settlement Agreement. "Settlement agreements are governed by the same general principles of contract law as any other agreement." *Zukerman v. Montgomery*, 945 N.E.2d 813, 819 (Ind. Ct. App. 2011). In general, "the interpretation of the construction or legal effect of a contract is a question of law to be determined by the court." *Id.* In addition, "[t]he unambiguous language

of a contract is conclusive and binding on the parties and the court, and the parties' intent is determined from the four corners of the document. We will neither construe unambiguous provisions nor add provisions not agreed upon by the parties." *Id.* (internal citation omitted).

## A. *Vagueness*

French argues that the Mediation Settlement Agreement is unenforceable because it is vague. A longstanding tenet of contract law states that in order "[t]o be valid and enforceable, a contract must be reasonably definite and certain." *Id.* Although "absolute certainty in all terms is not required," a contract will not be enforceable absent "reasonable certainty in the terms and conditions of the promises made, including by whom and to whom." *Id.* In other words, a contract is required to include essential terms that will "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Id.* Here, French contends that the Mediation Settlement Agreement, which references Schedule C of the Purchase Agreement, "is not definite and clear enough to determine a breach or identify a remedy for an alleged breach" because "the Elkins have placed several versions of [the Purchase Agreement] in the record." (Appellant's Br. p. 10).

There are two versions of the Purchase Agreement in the record. The first version is attached to the Elkins' Complaint, and it was executed by Elkin, Harmon, French, and Elkin & Harmon LLC on May 20, 2011. In this document, French agreed to purchase Elkin's share of Elkin & Harmon LLC for $10,000. French also agreed to "assume and cause to be assumed all of

those Liabilities set forth in **Schedule C** . . . and have Elkin released from liability therefore." (Appellant's App. p. 15). While there is no document attached to the Purchase Agreement identified as "Schedule C," the Purchase Agreement does include an "Exhibit C" which is entitled "Schedule of Guarantees and Personal Liability to be Rescinded." (Appellant's App. pp. 36-37). This Schedule of Guarantees solely identifies a $205,020.56 debt that Elkin & Harmon LLC owed to Stock Yards Bank, which is described as "Elkin & Harmon Debt For 2000 Grant Line." (Appellant's App. p. 37). In turn, a slightly different version of the Purchase Agreement is attached to the Elkins' Motion to Enforce Settlement. Although nearly identical in most respects, this version includes the Company as a party instead of Elkin & Harmon LLC, and the purchase price is listed as $20,000. Additionally, the Schedule of Guarantees lists, among other debts, the SBA Loan with an outstanding balance of $93,448.07. It does not list the $205,020.56 debt to Stock Yards Bank. Finally, we note that this version does not include a signatory page.

[23] From the record, it is evident that throughout these proceedings, the trial court and parties all relied upon the version of the Purchase Agreement attached to the Elkins' Motion to Enforce Settlement Agreement. According to French, however, "there is no evidence in the record suggesting [that he] agreed that the version [of the Purchase Agreement] attached to the Elkins' Motion to Enforce Settlement Agreement is the document agreed to in mediation." (Appellant's Br. p. 11). On the other hand, the Elkins contend that French has waived any

right to challenge the authenticity of the Purchase Agreement attached to their Motion to Enforce Settlement Agreement. We agree with the Elkins.

[24] It is well established that a party may not raise an argument before an appellate court unless the party raised that argument or issue with the trial court. *Merrillville 2548, Inc. v. BMO Harris Bank N.A.*, 39 N.E.3d 382, 389 (Ind. Ct. App. 2015), *trans. denied*.

> This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by the parties. Appellate courts, on the other hand, have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision. The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider.

*Id.* (internal citations omitted) (quoting *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002)). That is to say, "an intermediate court of appeals . . . is not the forum for the initial decisions in a case." *Id.* (quoting *GKC Ind. Theatres, Inc.*, 764 N.E.2d at 651). As a result, issues not presented to the trial court are generally waived on appeal. *Id.* (quoting *GKC Ind. Theatres, Inc.*, 764 N.E.2d at 651).

[25] In the present case, there were two hearings and numerous motions filed regarding the Elkins' motions to enforce the Mediation Settlement Agreement. Yet, French never raised as an issue the fact that the Purchase Agreement attached to the Elkins' Motion to Enforce Settlement Agreement differs from

the contract attached to their Complaint. Furthermore, when the Purchase Agreement, along with Schedule C identifying the SBA Loan, was admitted into evidence during the May 21, 2015 hearing, French made no objection. In fact, French remarks in his appellate brief that he first noticed "the Elkins' use of the two versions while compiling the Appendix." (Appellant's Br. p. 11 n.1). Also, French never argued at the trial court that the $93,448.07 SBA Loan was not among the debts that he warranted had been satisfied through the Mediation Settlement Agreement. Rather, French, through his attorney,[3] argued that he was aware of his obligation to refinance the SBA Loan in order to secure the release of the Elkins' guaranty. Thus, he posited that he had complied with the Mediation Settlement Agreement because he did, in fact, refinance the SBA Loan and, in so doing, believed that the Elkins had been released from their personal guaranty. By failing to challenge the authenticity of the Purchase Agreement—and Schedule C in particular—at the trial court, French has waived this matter for appeal.

[26] Waiver notwithstanding, we find that French's vagueness argument fails. Although not addressed by either party, based on our review of the two versions of the Purchase Agreement, it actually appears that there were two separate contracts entered into on the same day, pursuant to which French agreed to purchase Elkin's interest in two different companies—*i.e.*, Elkin & Harmon

---

[3] Represented by counsel, French did not personally appear at either of the hearings held on the Elkins' motions to enforce the Mediation Settlement Agreement.

LLC for $10,000 *and* the Company for $20,000. The Mediation Settlement Agreement explicitly pertains to the Purchase Agreement involving the Company as a party. Accordingly, Schedule C for this Purchase Agreement (*i.e.,* the Schedule of Guarantees located between Exhibits B and D) identifies, among other debts, a balance on the Company's SBA Loan of $93,448.07. Based on the plain language of the Mediation Settlement Agreement, French expressly warranted that this SBA Loan had been "satisfied, paid in full, and/or refinanced to release any personal guarantees by or on behalf of the Elkins." (Appellant's App. p. 47). Therefore, the Mediation Settlement Agreement is not unenforceable due to vagueness.

## B. *Mistake or Surprise*

French also argues that the trial court erroneously denied his Motion for Relief from Order because the Mediation Settlement Agreement is void due to mistake or surprise. Indiana Trial Rule 60(B)(1) provides that a "court may relieve a party . . . from a judgment" due to "mistake, surprise, or excusable neglect." A party filing a motion under Trial Rule 60(B)(1) "must allege a meritorious claim or defense." Ind. Trial Rule 60(B). In his Motion for Relief from Order, French argued that the Mediation Settlement Agreement "should be set aside and renegotiated" because he entered into it "after being falsely convinced that [the Elkins] were released of all liability under their personal guarant[y] agreements with the SBA." (Appellant's App. p. 136). On appeal, he asserts that the trial court should have granted his requested relief because he was "misled by [Stock Yards Bank] and Elkin and executed the Mediation

Settlement Agreement believing Elkin's personal guarant[y] had been released." (Appellant's Br. p. 13).

[28] A trial court's decision to grant or deny a motion for relief from order is accorded "substantial deference on appeal." *Rissler v. Lynch*, 744 N.E.2d 1030, 1032 (Ind. Ct. App. 2001). On review, we will uphold the trial court's determination absent an abuse of discretion. *Id.* It is an abuse of discretion "if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Id.* We will neither reweigh the evidence nor substitute our judgment for that of the trial court. *Id.* The trial court's determination of surprise or mistake under Trial Rule 60(B)(1) "must turn upon the unique factual background of each case." *Id.* French bears the burden of establishing grounds for relief. *Id.*

[29] In this case, we find that French has failed to satisfy his burden of proving that he is entitled to relief because he had mistaken information when he executed the Mediation Settlement Agreement. Rather, there is evidence establishing that Stock Yards Bank amended its loan agreement to allow French to assume the Elkins' personal liability for the SBA Loan. However, the SBA did not release the Elkins' personal guaranty. Instead, the SBA released its lien on the Elkins' residence when French was added as a guarantor, but because "the loan [was] not seasoned," the SBA declined to release the Elkins' personal guaranty. (Appellant's App. p. 143). Elkin testified that when he met with Harmon and French for the closing of the SBA Loan refinance, Stock Yards Bank informed all parties "that [Elkin's] name was [going to] be left on there, but [his] house

was [going to] be taken off." (Tr. p. 15). Based on this evidence, we cannot say that the trial court abused its discretion by denying French's Motion for Relief from Order and enforcing the Mediation Settlement Agreement.

### C. *Indemnification and Attorney Fees*

[30] Lastly, French asserts that the trial court's Order enforcing the Mediation Settlement Agreement is both contrary to the parties' intent and unsupported by the evidence. In particular, he argues that the Mediation Settlement Agreement does not provide for indemnification, and it specifically states that "[a]ll parties agree to pay their own attorney's fees and related case expenses." (Appellant's App. p. 48). Yet, the trial court ordered that he and Harmon must pay $16,750 to the Elkins "as a means of enforcing" their warranty "that the SBA loan would be paid in full or refinanced to release any personal guarantees by or on behalf of the Elkins." (Appellant's App. p. 159). The trial court also ordered French and Harmon to "pay $2,100 in attorney fees associated with the enforcement of the Mediation [Settlement] Agreement and by virtue of their failure to follow the [c]ourt's Order of June 12, 2015 within [thirty] days." (Appellant's App. p. 160).[4]

[31] "When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties." *Trustcorp Mortg. Co. v. Metro Mortg. Co.*, 867 N.E.2d 203, 212 (Ind. Ct. App. 2007). Where, as here, the contract's

---

[4] We decline to address the issue of attorney fees as French has failed to set forth a cogent argument with appropriate citations to authorities. Ind. Appellate Rule 46(A)(8)(a).

language is unambiguous, the parties' intent must "be determined from the four corners of the contract." *Id.* The Mediation Settlement Agreement states that "Harmon and French warrant that all liabilities listed on 'Schedule C' to [the] [P]urchase [A]greement have been satisfied, paid in full, and/or refinanced to release any personal guarantees by or on behalf of the Elkins." (Appellant's App. p. 47). We find it clear from the Mediation Settlement Agreement that the parties intended for Harmon and French to be financially responsible for all of the debts listed on Schedule C of the Purchase Agreement. Thus, when the Elkins were, in fact, required to pay for the SBA Loan, it was proper for the trial court to order Harmon and French to reimburse them. Harmon and French might have been liable for the full loan balance of $77,019.72, but, as the trial court found, "[t]he Elkins reasonably mitigated the damages by resolving the issue with the SBA for $16,750." (Appellant's App. p. 159). French argues that "Elkin offered no evidence that he actually paid the $16,750 the trial court ordered French to pay." (Appellant's Br. p. 14). We disagree. Elkin specifically testified that he negotiated and resolved the SBA loan by paying $16,750, and it is not the role of this court to reweigh evidence. Therefore, the trial court's Order is not contrary to the parties' intent in the Mediation Settlement Agreement, and it is supported by the evidence.

## CONCLUSION

[32] Based on the foregoing, we conclude that the trial court properly ordered the enforcement of the Mediation Settlement Agreement.

[33] Affirmed.

[34]    Kirsch, J. concurs

[35]    Bailey, J. concurs in result